LYMAN, executor, &c. *vs.* PARSONS and others.

A testator, who was a resident of the state of Connecticut, and domiciled there, made his will in that state, and died there in October, 1848, leaving a widow and four children, one son and three daughters, all minors at the time of his death. A portion of his estate consisted of a leasehold interest in two

Lyman *v.* Parsons.

houses and lots in the city of New York, stock in an insurance company, and promissory notes against persons and firms in the city of New York. By his will, the testator, after giving and devising to his wife his homestead, furniture, books, carriages, &c., and to his daughter C. a piano-forte, and an annuity of $700 to his wife, gave and devised all the residue of his estate to his executors, *in trust;* two-fifth parts thereof for the sole use and benefit of his son, J. H., and *his heirs* and assigns forever; and the remaining three-fifth parts thereof for the sole use and benefit of his three daughters, in equal shares, to them respectively, and their respective heirs and assigns for ever. The testator then declared how, and in what manner, the trustees were to apply and dispose of the trust fund for the use and benefit of his children and their issue. During their minority, respectively, the trustees were directed to expend, for their support respectively, such sums as might seem expedient; charging the sums expended for each towards his or her share of the estate. The trustees were directed to pay his son, on his attaining the age of 21 years, $5000, and a further sum, not exceeding $5000, if they thought it would be for his interest. On his attaining the age of 23 years, they were directed to pay him such an amount as they should deem it most for his interest to receive, not exceeding $10,000; on his attaining the age of 25, such sums as they should deem it most for his interest to receive, but not exceeding in any year $10,000; and they were directed so to continue to make such payments, from one period of two years to another, until the share of the son should have been paid. The trustees were to pay to each of the daughters $2000 on their respectively attaining the age of 21, and every two years thereafter $2000, until the share of each should have been paid off; but the trustees, in their discretion, after the first payment to the daughters, were authorized to diminish the subsequent payments, provided they used no unnecessary delay in making the ultimate payment of the share of each daughter. If the son should die before receiving his share, leaving no lawful issue, then his share remaining in the hands of the trustees was to be paid over, in equal shares, to the daughters. And if any one or more of the daughters should die before receiving payment of their respective shares, leaving no lawful issue, their shares remaining unpaid were to be paid, two-fifths of each to the son, and the remainder to the surviving daughters. Should any one or more of the children die, leaving lawful issue, such issue should be entitled in equal portions to the share or shares of the respective parent or parents remaining in the hands of the trustees; but in such case the trustees were to hold and dispose of such share or shares in such manner that such issue only, and their legal representatives, should have benefit or advantage thereof. The executors were directed to sell the real estate in New York and Connecticut, and to add the proceeds thereof to the general fund. No direction was given as to the interest or income of the estate, as distinguished from the principal.

*Held,* 1. That the testator intended that the bulk of his estate, real as well as personal, should be converted into money; and invested and kept together

by his trustees as one fund; and that out of the same, and its accruing interest or income, the trustees should, from time to time, pay the annuity to the widow; the sums deemed expedient for the support and education of the children during their minority; and as they severally attained the age of 21, to each a certain other sum; and after that, to pay over the residue of the fund or estate in their hands, with its accruing interest, to the children and *their issue*, in certain periodical payments; and in a certain manner in their discretion.

2. That the testator did not intend that his children should have the interest or income of the fund, and the benefits and payments specifically directed by him, in addition; but that he intended the interest or income of the fund to be added to the principal, and to be kept together; and that out of this fund, increased by these additions of income or interest, the payments directed by him should from time to time be made.

3. That the whole trust estate was to be considered as converted into money, under the power of sale, and invested by his trustees living in Connecticut; and the will was to be carried into effect, and the rights of parties beneficially interested under it were to be determined according to the laws of that state.

4. That the decree of the surrogate, declaring that the biennial payments directed in the will to be paid to the children of the testator, were applicable alone to the principal or corpus of the estate, and declaring that the children were entitled to, and that the executor should distribute, the net income of their shares from the time of the testator's decease, was erroneous, and should be reversed.

5. That the surrogate of New York had no jurisdiction over moneys voluntarily paid to the executor by New York debtors, previous to the granting of letters testamentary by said surrogate; and that the decree of the surrogate, adjudging and decreeing that the executor should account to the surrogate for the assets realized by him from debtors residing in New York before the issuing of letters testamentary was erroneous.

6. That whether the trustees under the will had discretionary power to pay to the testator's son, J. H., out of the trust funds in their hands, at and after he should have attained the age of 25 years, $20,000 biennially, until his entire share should be paid off, was a question for the courts of Connecticut, where the fund was. CLERKE, J., dissented.

APPEAL from a decree of the surrogate of New York, giving a construction to the will of Samuel Parsons, deceased, and directing the executor to account for the assets realized by him in this state. The facts appear in the opinion of SUTHERLAND, J., and in the report of the case before the

surrogate. (4 *Bradf.* 268.) David Lyman, the executor, appealed.

*Hiram Ketchum*, for the appellant.

*D. D. Field* and *W. Stanley*, for the respondents.

SUTHERLAND, J.   I think the construction of the will of Samuel Parsons by the supreme court of errors of Connecticut is the true construction, and that of the surrogate of the county of New York erroneous.

The testator, a resident of the state of Connecticut, and domiciled there, made his will in that state, and died there October 14, 1848, leaving a widow and four children, one son and three daughters, all minors at the time of his death; and an estate valued at about $147,000, a portion of which consisted of a leasehold interest in two houses and lots in the city of New York, valued at about $18,000; six shares of the stock of an insurance company in New York; and promissory notes against persons and firms in the city of New York, amounting to about $34,000.   The testator, by his will, dated the 7th day of October, 1848, after giving and devising to his wife his homestead, with the furniture, books, carriages, &c., and a piano-forte to his daughter Catharine, and an annuity of $700 to his wife, to be paid to her by his executors out of his estate, until her decease or marriage; gives and devises all the residue of his estate to his executors, named in the will, (David Lyman, the appellant, and his wife,) *in trust;* two-fifth parts thereof for the sole use and benefit of his son Joseph H. Parsons, and *his heirs* and assigns for ever; and the remaining three-fifth parts for the sole use and benefit of his daughters, Catharine, Elizabeth and Caroline, in equal shares to them respectively, and their respective heirs and assigns for ever.   The testator then declares *how* and *in what manner* the trustees are to apply and dispose of the trust fund for the *use and benefit* of his children and their issue.

During their minority, respectively, the trustees are directed to expend for their support respectively such sums as may seem expedient, charging the sums expended for each toward his or her share of the estate. The trustees are directed to pay his son, on his attaining the age of 21 years, $5000, and a further sum not exceeding $5000, if they think it will be for his interest. On his attaining the age of 23 years, they are directed to pay him such an amount as they shall deem it most for his interest to receive, not exceeding $10,000; on his attaining the age of 25, such sums as in their discretion they shall deem it most for his interest to receive, but not exceeding in any one year $10,000; and they are directed so to continue to make such payments, from one period of two years to another, until the share of the son shall have been paid off and discharged. The trustees are to pay to each of the daughters $2000, on their respectively attaining the age of 21; and every two years thereafter $2000, until the share of each shall have been paid off; but the trustees, in the exercise of a sound discretion, after the first payment to the daughters, are authorized to diminish the subsequent payments, provided they use no unnecessary delay in making the ultimate payment of the share of each daughter. If the son dies before receiving his share, leaving no lawful issue, then his share remaining in the hands of the trustees is to be paid over in equal shares to his daughters. If any one or more of his daughters should die before receiving payment of their respective shares, leaving no lawful issue, their shares remaining unpaid shall be paid, two-fifths of each to the son, and the remainder to the surviving daughters. If any one or more of the children die, leaving lawful issue, such issue shall be entitled in equal portions to the share or shares of the respective parent or parents remaining in the hands of the trustees; but in such case the trustees are to hold and dispose of such share or shares in such manner that such issue only, and their legal representatives, and no other person or persons, shall have benefit or advantage thereof. The executors are directed to sell the real

estate in New York and Connecticut, and to add the proceeds thereof to the general fund. The funds arising from the bills of exchange and promissory notes, as well as all other funds coming into their hands, are directed to be invested in safe interest paying national or state stocks, and some few banks of character and credit. No direction is given as to the interest or income of the estate as distinguished from the principal. These are the principal features and directions of the will.

It is very plain that the testator intended that the bulk of his estate, real as well as personal, should be converted into money, and invested and kept together by his trustees as one fund; and that out of the same, and its accruing interest or income, the trustees should from time to time pay the annuity to the widow; the sums deemed expedient for the support and education of the children during their minority; and as they severally attained the age of 21, to each a certain other sum; and after that to pay over the residue of the fund or estate in their hands, with its accruing income, to the children and *their issue* in certain periodical payments; and in a certain manner, with certain discretionary powers, given to the trustees; specified in the will with wonderful precision of language.

The direction, with regard to those payments for the support and education of the children during their minority, and to them and their issue on their attaining their majority, and afterwards so carefully given in the will, may be considered, and is a declaration by the testator of the manner in which he intended them to be benefited by his estate, and by his previous direct bequest and devise thereof to his executors in trust for their *use and benefit*.

The testator did not intend that his children should have the interest or income of the fund, and the benefits and payments specifically directed by him in addition; but he intended the interest or income of the fund to be added to the principal, and to be kept together, and that out of this fund,

increased by these additions of income or interest, the payments directed by him to be made by his trustees should, from time to time, be made. It is very probable and reasonable that the interest, or sufficient to make the payment, would first be taken and used.

If there is any unlawful accumulation, or suspense of the absolute power of alienation, directed by the will, or involved in its provisions, it is for the courts in Connecticut to say so. The testator lived there; made his will there; died there; and this whole trust estate is to be considered as converted into money under the power of sale, and invested by his trustees living there. The will is to be carried into effect, and the rights of parties beneficially interested under it are to be determined according to the laws of that state. The testator violated no law of this state in making his will, and none need be violated in carrying it out.

It is very clear that the surrogate of New York was led to his construction of the will by too close attention to the particular clause of the gift and devise to the executors in trust for the use and benefit of the children, their heirs, &c., without paying sufficient attention to the subsequent provisions of the will, qualifying and explaining this use and benefit, and showing the testator's intention.

If the construction of the will was called for by the proceeding before the surrogate of New York, I think, therefore, his construction was erroneous, and that the parts of his decree founded thereon, declaring that the biennial payments directed in the will to be paid to the children of the testator, are applicable alone to the principal or corpus of the estate, and declaring that the children are entitled to, and that the executors distribute the net income of their shares from the time of the testator's decease, should be reversed.

The interest of the children in their unpaid shares can hardly be said to be vested; for, on the death of a child, his or her share remaining unpaid, would go to the surviving children,

Lyman *v.* Parsons.

or to the issue of the child so dying, under the will, and not under the statute for the distribution of intestate's estates.

For reasons which will be very briefly stated, I also think that part of the decree of the surrogate of New York adjudging and decreeing that the appellant should account to said surrogate for the assets realized by him from persons and firms residing in the city of New York, and paid to the appellant before letters testamentary were granted by the said surrogate, was equally erroneous and should be reversed.

I suppose it would be correct to say that the title to all the personal property or movables of the testator, wherever situated, vests in his executor on his death, by virtue of the appointment in the will, rather than by the probate of the will and the granting of letters testamentary. (*Schultz* v. *Pulver*, 11 *Wend.* 363. *Valentine* v. *Jackson*, 9 *id.* 303. 1 *Wms. on Ex'rs*, 239.)

The probate and granting of letters testamentary is a municipal regulation for the purpose of furnishing authenticated evidence of the title of the executor and of his right to assert and enforce it. But one state cannot make a rule or regulation of evidence for the courts and authorities of another state ; and therefore whether letters testamentary granted in Connecticut shall be evidence of the executor's title and rights in New York, depends upon the laws of New York. But as this question of evidence cannot arise except in some suit or legal proceeding by or against the executor for *enforcing* or *attempting to enforce* his right and title, I must confess I cannot see how it can arise in the case of a *voluntary payment* to a foreign executor, the party paying the money taking upon himself the risk of the title of the executor and of his right to receive payment. In this case, it appears that about $34,000 of the estate of the testator consisted of promissory notes of persons and firms residing in the city of New York; that all of these notes were deposited by the executors in the Merchants' Bank of the City of New York, and in the Middlesex County Bank in Connecticut, and that they were all volunta-

rily paid before October 27, 1849. Who can find fault with this voluntary payment without suit, fraud, or force? The parties who paid the money cannot and do not; for they have not been called upon for the money again ; and it is not pretended that they have not paid it to the right person. The legatees, or those beneficially interested under the will, cannot, for the money has been paid to the right persons, and has gone to the right place—into the general fund of the estate in the hands of the trustees, to be distributed and paid out by them under the will of the testator ; the construction of which, it is admitted, belongs to the courts in Connecticut; or at all events, is to be construed and carried into effect according to the laws of Connecticut. Who, then, can complain? And why should the surrogate of New York have assumed jurisdiction over the moneys thus voluntarily paid to the appellant by the New York debtors, and which had been added by him to the general fund of the estate in the hands of the trustees in Connecticut, and had been held by such trustees there, to be disposed of under the trusts of a will executed and which took effect there nearly six years ago, when letters testamentary were issued to the appellant by the surrogate of New York?

In my opinion it is clear, both on principle and authority, that the surrogate of New York had no jurisdiction whatever over the moneys thus voluntarily paid to the appellant by the New York debtors previous to the granting of letters testamentary by said surrogate. (*Vroom* v. *Van Horne,* 10 *Paige, 556, 557, and authorities cited by the chancellor in that case. Selectmen of Boston* v. *Boylston,* 2 *Mass. R.* 384.) It is true that it is perfectly well settled that the executors of Samuel Parsons could not have maintained a suit in this state by virtue of the letters testamentary granted in Connecticut. (*McNamara* v. *Dwyer,* 7 *Paige,* 243. *Schultz* v. *Pulver, supra.*) But it appears equally well settled that the will was to be interpreted, and the personal estate of the deceased was to be disposed of and distributed, according to the laws of the coun-

Lyman *v.* Parsons.

try in which he had his domicil at the time of his death. (*Shultz* v. *Pulver, supra.* 4 *John. Ch.* 469.) The surrogate of New York admits in his opinion in. this case that " this estate is to be distributed, and the will interpreted according to the laws of the domicil of the testator."

Whether the trustees under the will have discretionary power to pay to the testator's son, Joseph H. Parsons, out of the trust funds in their hands, at and after his having attained the age of 25 years, $20,000 biennially until his entire share shall have been paid off, is a question, I think, for the court of Connecticut, where the fund is.

It is very clear, for reasons before stated, that the part of the surrogate's decree declaring that the trustees have this discretionary power to pay him $20,000 biennially out of the principal of his share, as distinguished from the income, ordered to be paid over to the children by the appellant, is erroneous and should be reversed.

In my opinion, all those parts and portions of the decree of the surrogate appealed from by David Lyman should be reversed.

DAVIES, P. J., concurred.

CLERKE, J., (dissenting.)   After a very minute examination of the facts and principles involved in this case, I entirely concur with the surrogate in the conclusions at which he has arrived on the two questions presented to him.

I. The executor having submitted himself to the jurisdiction of the surrogate of this county, must account to him in relation to *all* matters connected with his duties, and his accountability, as executor.   The power of the officer is not partial or fragmentary ; but, in order to be effectual, must embrace every thing necessary to the perfect administration of the estate. Whatever might have been the motive of the executor in applying for letters testamentary here, or whatever necessity might have impelled him to apply, the surrogate cannot inquire, as

far as the *accounting* is concerned, whether he has accounted before any other jurisdiction, or not. I repeat, having come here, he is bound to account here, and that not in part, but in whole. He must account, and that necessarily means that he must render an entire statement of his receipts, payments and charges. Of course, he cannot be compelled to pay what he is bound to pay, more than once. But with regard to that matter, on this occasion, the surrogate and the court have nothing to do. The inquiry now concerns merely the accounting.

II. The surrogate, then, having the power to compel a complete accounting, he can determine the manner of the accounting, and the principles by which it is to be governed, only by the laws of our own state. If they are in conflict with the laws of any other jurisdiction, within which the property involved is placed, or before whom the executor might have previously accounted, it is not for the surrogate to apply the remedy.

In the beginning of the bequest, the whole estate is given absolutely for the sole use and benefit of his son and daughters, their heirs and assigns for ever. There is nothing inconsistent with this absolute gift in the subsequent clauses of the will. It is indeed, as to each legatee, liable to be divested, in case he should die before the payment of the share. But we know that the prior devise or bequest " must not be disturbed further than is absolutely necessary for the purpose of giving effect to the posterior qualifying disposition." It was very different in the case of *Chrystie* v. *Phyfe*, in which I maintained that the prior words of absolute inheritance were nullified by the posterior qualifying words. The subsequent limitations in that case provided that if Miss Mackaness should die unmarried without leaving lawful issue, the estate should go to her sisters, their heirs and assigns for ever. If she should die leaving lawful issue, then to such child or children, his, her or their heirs and assigns for ever; and in case she should die without lawful issue, and if at her death, her sisters should not be living, the will provided that the estate should go to

the children of her said sisters, their heirs and assigns for ever. By no possibility, I therefore contended, by virtue of that devise, if the limitations were not to be totally rejected, could a fee vest in Miss Mackaness. These principles, which were indicated in a dissenting opinion, have been since fully recognized by the court of appeals, in *Norris* v. *Beyea,* (3 *Kernan,* 273.) In that case, there was a bequest in language denoting an absolute gift of the whole estate ; but, in a subsequent part of the same will there was a limitation over, in the event of the first legatee dying under age and without issue. The gifts, it was held, were not repugnant to each other; but the latter was a valid executory gift. In these cases the intent of the testator, notwithstanding the apparent repugnancy, could be deduced from the whole scope of the will.

In the case before us, notwithstanding a similar apparent repugnancy, the intent of the testator can also be deduced from the whole scope and purport of the will ; but the intent is dissimilar from that deducible in the other cases. The portions treated of are invariably called the shares of the legatees, vested in and belonging to them, and to be paid to them, and to be given over only in case of death before payment. The payments are to be made, in some respect, according to the discretion of the executors ; but it was evidently intended by the testator, that the time of payment should not be arbitrarily protracted. They are cautioned not " to use unnecessary delay in making ultimate payment" of the share of each daughter. Now, although, as we have seen, the mere employment of the ordinary technical words of inheritance, does not peremptorily and positively import a fee, or absolute ownership, in defiance of subsequent words of qualification and limitation ; yet, if in addition to the words of inheritance, there is enough in the whole tenor and language of the will, to show that the testator intended that the whole property in the bequest should vest in the legatee, and not a mere life or usufructuary interest, then it is a safe rule, that the effect of the subsequent words shall be countervailed and the prior words

effectuated. This I have endeavored to illustrate in the case to which I have above referred. And I think the present case affords an additional illustration of it. The testator directs full payment and discharge of the *corpus,* the principal, of the estate, not a payment or application merely of the proceeds or profits of it. This right to the *corpus* or principal, according to the respective shares, he plainly designed should at once vest in each child; liable, indeed, and barely liable, to be divested. But it would be a strange construction to liken such a bequest to a contingent or usufructuary interest. I, therefore, agree with the surrogate, that the children are entitled to all the produce of their shares from the time of the testator's decease, deducting what has been expended for their maintenance respectively; and that the biennial payments are applicable alone to the principal.

The surrogate's decree should be affirmed, with costs.

Decree reversed.

[New York General Term, November 23, 1858. *Davies, Clerke* and *Suthland,* Justices.]