(37 Misc. Rep. 642.)

### RUSSELL et al. v. HILTON et al.

(Supreme Court, Special Term, New York County. April, 1902.)

1. **WILL—CONSTRUCTION—EQUITABLE CONVERSION.**
    Testator devised all his property in trust, authorizing the trustees to lease it, sell it, and distribute it as directed by him. *Held* to work an equitable conversion of the realty into personalty.

2. **SAME—TESTAMENTARY TRUST.**
    Where a will authorizes trustees to lease property, or sell it, and pay over and distribute it as directed, it creates a valid, active trust for distribution and payment.

3. **SAME—NATURE OF ESTATE.**
    A testator, in his will, which he drew himself, made no gift, except to the executors for distribution, and made no use of the word "income"; declared that all bequests should be paid personally to the parties entitled thereto, except as otherwise provided; and directed that a certain share of his residuary estate should be paid to his daughter, and that on her death her share and interest should be paid to her surviving son, or others in remainder. *Held*, that she was entitled to the principal of her share, and that she stood as trustee of it, during her life, to the remainder-man.

4. **SAME.**
    Where a will directed that a share of the residuary estate should be paid over to testator's son, with remainder over, and that his executors should, in their discretion, during the life of the son, pay over "not exceeding two-thirds of his share to the said wife" of the son, he was not entitled to the principal of the share.

5. **SAME—TRUST IN PERSONALTY.**
    Testator, after forbidding the sale, assignment, transfer, or control of a share to his son, empowered the executors to retain and withhold

it in trust, and pay over such part as was necessary for his support and that of his wife and children, and on his death to pay the remainder to them. *Held* to constitute a valid trust in personalty.

**6. SAME—TRUST.**

Where testator by an earlier clause in the will gave a specific legacy to his sons, and thereafter created a trust in the "share and interest" of each of them in the residuary estate, such specific legacies were a part of the trusts, and the legatees were not entitled to have possession thereof.

**7. SAME.**

A provision authorizing executors to set apart a certain sum, out of which they might pay for the use of testator's son or his wife, or either, such sum as the executors might consider expedient, did not pass to the wife's administrator after her death so much of the sum as had not been expended.

**8. EXECUTOR—COMPENSATION.**

Where an executor rendered valuable services to the estate, in excess of his duties as such, he is entitled to compensation beyond his commissions.

Action by Horace Russell and another, executors of Henry Hilton, against Edward B. Hilton and others, to construe a will. Decree rendered.

Russell & Holmes, for plaintiffs.

James F. McNaboe, for defendant Hattie K. Hilton.

George M. Wright, for defendants Edward B. and Dorothy W. Hilton.

Nathaniel S. Smith, for guardian ad litem.

Butler, Notman, Joline & Mynderse, for defendant guardian ad litem.

David McClure, for defendant Cornelia H. Hughes.

SCOTT, J. The purpose of this action is to obtain a judicial construction of the last will and testament of Henry Hilton, deceased. The testator had been successively a lawyer in active practice, a judge of the superior court of this city, and a successful man of affairs, engaged in large enterprises. His will is in his own handwriting and is extremely unartificial in form, suggesting numerous questions of construction. In view of the testator's life history, it is to be assumed, however informal his will may be, that he used the language in which it is couched with a precise appreciation of the legal meaning and effect of words and phrases, and that even slight differences of expression regarding the disposition of the several shares of his estate are to be considered as having been used with deliberate intention.

The estate consisted of both personalty and realty, and the first question which presents itself is whether or not the will worked an equitable conversion of the real estate into personalty. Whether or not such a conversion was effected depends upon the intention of the testator, and the general rule is that such an intention is found where the direction to sell is imperative, or where a conversion is necessary to accomplish the purpose and intention of the testator as to the disposition of his estate. Dodge v. Pond, 23 N. Y. 69; Salisbury v. Slade, 160 N. Y. 278–289, 54 N. E. 741. Not only does the language of the will now under consideration expressly direct the executors

to sell the real estate, but the whole scheme of the will requires that this shall be done. The very first clause of the will contains such a direction, as follows:

"All my property and estate, of every kind and description, and wheresoever situated, I hereby give, devise, and bequeath to my executors hereinafter named, in trust, to take the custody and possession thereof, and sell and dispose of the same at such times and in such manner as they shall deem fit or proper, and convert the same into money, and pay over and distribute the same as follows."

Here is to be found not merely authority to sell and convey, but a positive direction to convert the estate into money. It is significant of the testator's intention that nowhere in the will, save in the clause above quoted, are there any words of gift, or devise of any portion, share, or interest in the estate. Every such disposition calls for a payment by the executors. Thus there are nine legacies of specific sums, but as to none of them does the testator, in terms, give the legacies to the legatees, but enjoins upon his executors the duty of paying to them the several specified sums. With respect to the residuum of his estate after the payment of the specified legacies, he provides that it shall be divided into 12 equal parts, which shall be "paid over and distributed." Similar expressions are to be found throughout the will, and, reading the whole document together, it is apparent that the testator's intention was that the title to the whole estate should vest in the executors, that it should be by them converted into money, and that the money thus realized should be divided and paid out by them in accordance with the directions contained in the will. The devise of the real estate to the executors in trust to convert it into money, and to pay therewith the sums and shares directed to be paid to the several beneficiaries, is expressly authorized by statute. Real Property Law (chapter 547, Laws 1896) § 76; Hubbard v. Housley, 43 App. Div. 129, 59 N. Y. Supp. 392, affirmed in 160 N. Y. 688, 55 N. E. 1096. Not only is the land devised to the executors, but they are expressly authorized, pending its sale, "to lease or let the same, or any part thereof, for such terms as they shall see fit." They are thus, by necessary implication, authorized to receive the rents and profits so long as the real estate remains unsold. The will does not, therefore, constitute the executors mere passive trustees, with power of sale, without power to receive the rents and profits, but, on the contrary, vests the whole legal title in them. Since the will worked an immediate equitable conversion of all the testator's real estate into personalty, the trusts set up by the will are to be considered as trusts of personal property, which are not fettered by the limitations prescribed for trusts of real estate, but may be created for any purpose, not unlawful, subject only to the law against perpetuities. Cochrane v. Schell, 140 N. Y. 516–534, 35 N. E. 971. The testator has undertaken to create a trust of personal property for distribution and payment over to his several beneficiaries in the manner and upon the events specified in the will. Such a trust is valid. Bowditch v. Ayrault, 138 N. Y. 222, 33 N. E. 1067. After providing for the payment to various people of specific sums, the testator directs the rest, residue, and remainder of his property

and estate to be divided into 12 equal parts, which are to be paid
over and distributed to two sons and two daughters; one son and one
daughter receiving each four-twelfths, and one son and one daughter
receiving each two-twelfths. The will then provides that "all of the
shares, legacies, and bequests shall be paid personally to the party
entitled thereto, except as herein otherwise provided." As to one
daughter no further direction is given, and it is conceded that she
is entitled to the payment directly of her share or interest. As to
the other daughter and the two sons, further provision is made. As
to the daughter the will provides as follows:

"The share and interest herein of my daughter Cornelia H. Hughes shall
be incapable of being sold, assigned, or transferred. On her death, leaving
her son Henry H. Hughes surviving, her share and interest then remaining
therein shall be paid over and belong to said Henry H. Hughes. But if she
shall survive her said son, then on her death any part of her share then
remaining shall be paid over to, and shall belong to, the children then living
of my daughter Josephine, and the children of my son Albert then living,
in equal shares and proportions."

The question which arises concerning this clause is whether the
testator intended that the whole share should be paid over to the
beneficiary, Cornelia H. Hughes, or whether the corpus of the de-
vise should be held and retained by the executors. The words of
direction used by the testator certainly import an intention that
the whole share should be paid to the daughter, unless, by necessary
implication, in order to carry out the full intention of the will, their
meaning must be restricted. He directs the division of his estate
into equal parts "which shall be paid over and distributed as follows,
viz.: To my daughter Cornelia H. Hughes two equal twelfth parts
thereof," and again directs that the share legacies and bequests
shall be paid personally to the party entitled thereto, except as
therein otherwise provided. Nowhere is it in terms provided that
the share of Mrs. Hughes shall not be paid to her personally. Is
it so provided by necessary implication? If the will merely grants
to Mrs. Hughes a life estate in the share set apart for her, with the
right only to use the income, and with remainder over to others,
it would probably follow that she would not be entitled to posses-
sion of the principal, at least without giving adequate security for
the benefit of the remainder-men. Tyson v. Blake, 22 N. Y. 558;
In re McDougall, 141 N. Y. 21, 35 N. E. 961. A different rule
prevails, however, when the person to whom the use and enjoyment
of a fund is given for life is authorized to expend a part of the
principal as well as the income. Smith v. Van Ostrand, 64 N. Y.
278; Flanagan v. Flanagan, 8 Abb. N. C. 413; In re Woods, 35
Hun, 60. It is noticeable that, although the testator indubitably sets
up certain trusts for life in his will, he nowhere uses the word "in-
come," or directs any disposition to be made of the income of any
share, as contradistinguished from the principal thereof. He clearly
intended that, in the administration and distribution of his estate, no
distinction should be made between principal and income. Of course,
he knew and had in mind the extent and nature of his estate, and
the fact that it would produce income; but, wherever he has vested
in any one discretion to pay out or to use any part of any share,

he has spoken of the share or interest as a whole, evidently intending to include both principal and income. Lyman v. Parsons, 28 Barb. 564; Lyman v. Parsons, 26 Conn. 493. That he anticipated that some part of the principal of Mrs. Hughes' share might be used up during her lifetime is evidenced by the fact that the bequest over after her death is not of the "remainder" which might be construed as bearing its technical meaning, but is of "her share and interest then remaining therein." Assuming that the will authorized the use by Mrs. Hughes of some portion of the principal of her share, it is significant that no discretion is given to the executors to determine how much shall be so used,—a discretion which is expressly vested in them as to the shares of Edward B. and Albert B. It was said by Judge Rapallo in Smith v. Van Ostrand, supra, that it is within the power of a testator "to confide the money to the legatee for life, trusting to such legatee to preserve the fund for the benefit of the remainder-men, in which case the legatee for life becomes trustee of the principal during the continuance of the life estate." This is precisely what the testator has done respecting the share or interest of Cornelia H. Hughes, limiting her power of disposition by the provision that her share may not be sold, assigned, or transferred, or disposed of by will. She is therefore entitled to receive the principal of her share.

The provision respecting the share and interest allotted to Edward B. Hilton is couched in language similar to that used with regard to the share of Cornelia H. Hughes, with the important addition of the following clause:

"Further, my executors are authorized and empowered, in their discretion, during the life of said Edward B., to pay over not exceeding two-thirds of his share to his said wife Dorothy."

To give effect to this clause, it follows that the corpus of the share or interest must be held by the executors during the life of Edward B. Hilton. The income, of course, is to be paid to him, subject to the discretionary power vested in the executors to pay not exceeding two-thirds of the income, or of the principal, or of both principal and income, to his wife. Since this construction is concurred in both by the executors and by Edward B. Hilton and his wife, the reasoning by which it is reached need not be elaborated.

The provision respecting the share or interest allotted to the testator's son Albert B. Hilton has been elaborately discussed upon the briefs. It reads as follows:

"The share and interest herein of my son Albert B. Hilton shall also be incapable of being sold, assigned, or transferred, or in any manner controlled, by him, and as to which I fully authorize and empower my executors to retain and withhold the same, in trust, to pay out or pay over or apply so much and such parts thereof as they may from time to time consider necessary, proper, or expedient for the support and maintenance of the said Albert and his wife and children during her life, and on his death to pay over and distribute such part of his share as shall be then remaining to his wife, Hattie K., and their children."

Since the will worked an equitable conversion of the whole real estate into personalty, the trust here attempted to be created must be tested as a trust of personal estate. Even from this point of view

it is attacked as void. It is said that in order to create a valid trust in personal estate, as well as in real, there must be a gift in trust to some one as trustee; and it is claimed that, as to Albert's share or interest, the will contains no such gift. This contention overlooks the fact, already referred to, that the will, in its very first clause, gives the entire estate to the trustees, in trust, and that nowhere, whether in respect to the specific legacies, or to shares in the residuum, are there any words of gift, devise, or bequest to any beneficiary, except by way of a direction to the executors to pay out that which had already been given to them. That this was the intention and understanding of the testator is made clear from the fact that, instead of "giving" Albert's share to the executors in trust, he authorizes them to "retain" it,—a form of expression which he could only have used because he understood that he had already given them the share. It is also urged that the attempted trust is nugatory because no disposal is made by the will of the rents and profits of the share, which, as it is claimed, are not given to the executors. It is true that in no part of the will is the income mentioned, or in terms given to the executors; but their right to collect the income is inherent in their ownership of the estate, and is necessarily to be implied from the authority given to them to lease the real estate pending the sale thereof. It is not to be assumed that the testator intended to leave the income undisposed of, and the reasonable implication is that he intended that it should go to the persons beneficially interested in the estate. Morse v. Morse, 85 N. Y. 53. The share and interest allotted to Albert consisted of four-twelfths of the residuum of the estate, after payment of the specific legacies, together with the interest thereon. The application of this share was vested in the discretion of the executors. It was expressly provided that it should not be in any manner controlled by him, and that the executors might "pay out or pay over or apply so much and such parts thereof as they may from time to time consider necessary, proper, or expedient for the support and maintenance of the said Albert and his wife and children." It is difficult to see how language could be devised to confer a wider discretion upon the executors. They are not limited to an application of the income, but may apply a part of the principal. They are not confined to paying over either principal or income to Albert or his family, but may pay it out or apply it not only for his support and maintenance, but for that of his wife and children; and these applications of the share are to be made as to the executors should seem necessary, proper, and expedient. If for any reason the executors should not deem it necessary, proper, or expedient to pay over or apply the whole income of the estate for the support and maintenance of Albert himself, there would be no unlawful accumulation of income, for his wife and children would undoubtedly be entitled to the unapplied balance. In re Crossman, 113 N. Y. 503, 21 N. E. 180. There is nothing unlawful, or even unusual, in the vesting in executors of a wide discretion, such as is vested in these executors respecting Albert's share. Such provisions have frequently been upheld. Donovan v. Van De Mark, 78 N. Y. 244; Holden v. Strong, 116 N. Y. 471, 22 N. E. 960.

In the first clause of his will, the testator directed his executors to pay certain specific sums to several named legatees, among whom were his sons Edward B. and Albert B. A question has arisen as to whether the amounts of these specific legacies should be paid directly to the named legatees, or should be deemed to be a part of the "share and interest herein," which, as to said Edward B. and Albert B., were by later provisions of the will directed to be held in trust by the executors. In using the words "share and interest," as indicating the provision made for each child, it is reasonable to assume that the testator meant to include, as to each child, all that he had directed to be set apart for him or her. No reason is apparent why, if he deemed it proper to intrust to the discretion of his executors the payment and application of the shares allotted to Edward and Albert out of the residuum, he should have provided for the direct payment to these two children of such considerable sums as $50,000 each. If such had been his intention, he could easily have used apt words to express it, by specifically limiting the sums to be held by the executors to the respective shares of these children in the residuum. From the nature and apparent purpose of the trusts created by the testator as to the shares of Edward and Albert, it is not to be presumed that he intended to leave these large specific legacies without the protection assured by the creation of the trusts. Genet v. Beekman, 26 N. Y. 35; Lewis' Appeal, 108 Pa. 133. The reason for giving these legacies specifically, and then directing a division of the estate, is suggested by the proportions in which the residuum was divided. Of that residuum, four-twelfths were given to each of two children, and two-twelfths to each of the other two; but to each of the four was given specifically the sum of $50,000, as if by way of equalizing, to some extent, the inequality in the division of the residuum. Thus the "share and interest" of each child consisted of $50,000, plus two-twelfths or four-twelfths, as the case might be, of the residuum of the estate.

The will contains the following provision:

"Ninth. My executors are hereby authorized, in their discretion, to set apart out of my estate the sum of twenty-five thousand dollars, out of which they may, from time to time, as they see fit, pay to or for the use of my son Henry G. Hilton and his wife, Agnes F., or to or for the use of either of them, such sums and amounts as my executors shall see fit, or shall consider fit and expedient."

Henry G. Hilton instituted a contest of the will, and thus, by virtue of a minatory provision contained therein, debarred himself from reaping any benefit under the clause above quoted. The executors elected to exercise the power of appointment conferred by the clause, and appointed Agnes S. Hilton as the person to reap the benefits under the power. Payments were made to her from time to time, although the fund of $25,000 was never actually severed from the estate. She has died, and her administrator claims so much of the $25,000 as has not been paid to her. This claim cannot prevail. There was no gift of the sum either to Henry G. or Agnes S. Hilton, and no indication of an intent on the part of the testator that the legacy should ever vest in them, or either of them. The plain inten-

tion of the testator was that the sum named should be held by the trustees, and paid out by them, in their discretion, for the personal benefit of the persons named,—an object which necessarily failed when the sole beneficiary died. The case is to be distinguished from those in which there has been a clear gift of the legacy, with the time of payment alone postponed or left discretionary. That the clause vested in the executors a valid power in trust is not questioned.

The estate in the hands of the executors consists, in addition to the personalty, of real estate partly productive, in some instances incumbered by mortgages, and all requiring more or less expenditure for repairs and preservation. As has been said, the entire estate has been given to the executors, with power to sell, but also with power to lease until a sale seems to be judicious. In such circumstances, there can be no doubt that the whole estate, while in the hands of the executors, is to be treated as an entity, and that the charges and expenses incident upon carrying any portion of it are to be paid out of the general income.

A question is suggested as to the power of the executors to employ one of their number to perform certain duties not strictly executorial in their nature, and to pay him out of the income of the estate a sum in excess of his commissions, which by the terms of the will are limited to a sum much less than he would receive if he were paid the commissions allowed by law. While it is unquestionably the general rule that an executor cannot receive compensation for services rendered to the estate as executor, beyond his commissions allowed by law or by the will, there have been numerous cases in this state where such additional compensation has been allowed for services not strictly executorial in their character. Lent v. Howard, 89 N. Y. 169; In re Braunsdorf, 13 Misc. Rep. 666, 35 N. Y. Supp. 298; In re McCord, 2 App. Div. 324, 37 N. Y. Supp. 852; In re Moriarity's Adm'r, 27 Misc. Rep. 161, 58 N. Y. Supp. 380; In re Young, 17 Misc. Rep. 680, 41 N. Y. Supp. 539. The question presented by the case at bar seems to fall within the principle upon which these authorities rest. If the executor in question did not devote his time to the duties for which it is sought to compensate him, it would be necessary to employ some one else to perform them, and the compensation of the person so employed would be a legitimate charge against the estate. The executor in question is peculiarly fitted, by professional knowledge as an architect, and by long experience in the service of the testator, to perform these duties; and no good reason is apparent why the estate should lose the benefit of his services, or depend upon some one presumably less competent. The amount of his compensation cannot properly be determined in this action, but should be left for the executors' accounting.

A decision and decree in accordance with this opinion may be settled upon five days' notice. Judgment accordingly.