WILLIAM T. GRAFF, Receiver, &c., Appellant, *v.* PATIENCE BONNETT and others, Executors, &c., of PETER BONNETT, deceased, Respondents.

In general, property held in trust for the debtor and for his benefit, may be reached through the agency of a court of equity, and applied to the satisfaction of his debts; but not property held in trust for him upon a trust, or arising out of a fund proceeding from a third person, designed to secure to the debtor personally, a support.

But a trust arising out of a fund proceeding from a third party, is not absolutely exempt from equity jurisdiction, but is subject to the same conditions under which other trust property may be enjoyed by a debtor secure from attacks from his creditors.

*It seems*, that in such case, only so much of the trust fund would be subject to the demands of creditors, as would remain a surplus after providing for the proper support of the *cestui qui trust.*

Therefore, in an action seeking to recover such fund by the creditor, &c., the complaint must show by proper averments, the existence of such surplus.

THIS is an appeal by the plaintiff from a judgment of the Superior Court of the city of New York, in favor of the defendants, rendered upon a demurrer to the complaint.

The complaint alleges that by virtue of certain proceedings supplementary to execution, the plaintiff was, prior to the

commencement of this action, appointed receiver of all the debts, property, equitable interests, rights and things in action, of William H. Bonnett.

(William H. Bonnett is made a party defendant in this action as one of the executors of Peter Bonnett, deceased, but not as the judgment debtor.)

That Peter Bonnett, the father of William H. Bonnett, by his will, dated November 20, 1849, gave to said William H. Bonnett, the interest of $15,000, to be paid to him during his life; and by said will directed, that said sum of $15,000 be kept invested on bond and mortgage and the interest paid to said William H. Bonnett during his life. That the will was duly proved before the surrogate of New York, on the 12th of September, 1850; and letters testamentary therein duly issued to the defendants.

It is then alleged that the plaintiff, by virtue of his appointment as receiver of the property of William H. Bonnett, is entitled as such, to receive from the defendants as executors, the interest accruing on said $15,000, from the time of his appointment.

That the defendants have collected the interest thereon since his appointment as receiver, and although requested to account to and pay the same over to the plaintiff, they have neglected and refused to do so, and judgment is demanded that the defendants account for said interest since October 9th, 1858, and pay the same to the plaintiff.

It is not alleged in the complaint that any part of the income or interest of the $15,000 was in the hands of the defendants, or was due and payable when the plaintiff was appointed receiver of the property of William H. Bonnett.

To this complaint the defendants demurred, on the ground that it did not state facts sufficient to constitute a cause of action.

Upon this demurrer judgment was given for the defendants, and the plaintiff now appeals to this court.

*John Aitkin,* for the plaintiff, appellant.

*John H. Reynolds,* for the defendants, respondents.

HOGEBOOM, J.   Although the terms of the will are not set forth in the complaint with any degree of detail, there is enough stated to justify the conclusion that the fund from which the annuity to William H. Bonnett is payable, was given to the executors *in trust* for that purpose, to invest the same and to make such payments to the annuitant from the income thereof during his life.   The executors are the trustees of this fund, and William H. Bonnett is the *cestui que trust*, and it is a trust of personal property.   The theory of the complaint unquestionably is, that the interest of the *cestui que trust* in this fund is *alienable;* that it is a vested interest in possession, and that an assignment to the receiver passes the debtor's interest in the fund, even though there was no interest or income in the hands of the executors at the time of the appointment of the receiver, and none then due and payable.   Hence the allegations in the complaint are, not that the executors had any income in their hands at the time of the appointment of the receiver, or that any had then become due, but that they have collected interest on the fund accruing *since* such appointment, and have refused to pay it over to the receiver; and that the latter is entitled to all the interest which has accrued *since* the date of his appointment.   This presents the first question which is raised by the defendants in the case, to wit, that nothing passed to the receiver as property of the judgment debtor except the installments of interest which had already become due at the period of his appointment; that future installments which might or might not ever become due, had not that characteristic of fixed and determinate interest which entitled them to the denomination of property, such as would pass to the receiver under an order made in supplementary proceedings.   There are some cases which tend to such a conclusion, and such seems to have been the opinion of the court below; but I think that court failed for the moment to recall a distinction which is made between different classes of cases on this subject, and which is founded upon the alienability or non-alienability of the debtor's interest in the fund.   If this interest is not alienable so far as it

is necessary for the support of the *cestui que trust,* then I think it has been well held, in several of the cases, that it will not pass to a receiver until it has actually become due, and perhaps not until it has been in some way determined that there will be a surplus over and above the inalienable right of the judgment debtor to a support; for it is only such surplus which is liable to the claims of creditors; and this surplus, it has been held, is not properly ascertainable under supplementary proceedings. to discover and appropriate the debtor's property to the satisfaction of the judgment, but only in a suit or proceeding where the issue is directly made upon the amount necessary for the debtor's support, and to which the trustees and *cestui que trust* are parties. But if the debtor's interest in this fund is vested and certain, though the time of payment may not have arrived, it strikes me it has about it those elements of property which would enable it to pass to a voluntary assignee or to an assignee under the insolvent laws, or to a receiver in supplementary proceedings. It is an interest to which the debtor is absolutely entitled under the will, of which nothing but the law can deprive him, which is necessarily to continue during his life, and which would have an appreciable value, dependent upon his probabilities of continuance in life, if exposed for sale. It is a fixed life interest in a specific fund, and the circumstance that the income or interest has not become due, does not seem to me to destroy the positiveness and absoluteness of the interest, even if it should be held to detract slightly from its value in the market. We are therefore necessarily driven to examine the other and more material question on the case, to wit, the alienability of this interest by the judgment debtor. If it is so far within his power that he can effectually transfer it to another person, then it is also, I think, accessible to the claims of his creditors.

The determination of this question must depend upon the construction which should be given to our statutes, in regard to limitations of, and interests in, personal property, and in regard to the exemption of certain trusts from the claims of creditors.

It is undeniable that if this were an interest in a trust, for the receipt of the rents and profits of lands, it would not be assignable; and it ·has been held in several cases, that the statute which provides that limitations of future or contingent interests in personal property, shall be subject to the statutory rules prescribed in relation to future estates in land, was, in effect, a legislative application of the same principles and policy to both classes of property; and that, even if the provisions of the statute were not sufficiently comprehensive, absolutely to require as a peremptory injunction of statute law, their application in all their length and breadth, and in the same degree, to both classes of property, the argument to be derived from the general similarity of the legislative enactments, in regard to both classes of property, from the similar, if not equal mischiefs to be remedied, and from the general policy of the law, would authorize a court of equity, in the exercise of its acknowledged powers, to apply the same rule of construction to both. I am aware that Mr. Justice COWEN, in *Kane* v. *Gott* (24 Wend., 641), and Assistant Vice-Chancellor SANFORD, in *Grout* v. *Van Schoonhoven* (1 Sandf. Ch., 336), have contended for the contrary doctrine, in arguments of much ingenuity and force; but I think the great preponderance of authority is in the opposite direction, and that the rule has been recognized and acted upon for so long a period, and with such general acquiescence, that it has become a law of property and ought not now to be invaded; and I confess, if the question were an original one, I should be of opinion that essentially the same rule should obtain as to the inalienability of estates and interests in both classes of property, and in the rents and profits and income thereof, as otherwise the restrictions imposed upon the enjoyment and transmission of interests in one class of property, might be readily evaded by a testator by directing its conversion into the other. For myself, therefore, I feel inclined to adhere to the rule as I think it is generally recognized, and to leave it to the legislature to sanction a departure from it, if it shall be deemed advisable.

If the view of the case thus far taken be correct, it becomes unnecessary to consider the further question which would otherwise arise, to wit, whether the clause in that section of our Revised Statutes, concerning the power to decree satisfaction of a debt out of property belonging to a debtor, or due to him, or *held in trust* for him, which excepts from the operation of such a power, the case "where such trust has been created by, or the fund so held in trust has proceeded from some person other than the defendant himself," interposes an insuperable barrier to the relief sought by the plaintiff, if he were otherwise entitled to it. One theory is, that this provision was designed to protect the interest of a beneficiary in a trust, whose object it was to provide for his maintenance and support, and to the extent necessary for such purpose only. Another theory is, that the exception exempts from the jurisdiction of a court of equity in this respect, all trusts, of whatever description, which proceed from, or are created by some person other than the debtor himself. A third theory is, that the exception applies to property held in trust for the debtor, not belonging to or coming from him, but proceeding from a third person, though created for the debtor's benefit, and in all such cases preserves the trust fund intact. My own opinion is, that the true reading of the statute is this: That as a general proposition, property held in trust for the debtor, and for his benefit, may be reached through the agency of a court of equity, and applied to the satisfaction of his debts, but not property held in trust for him upon a trust, or arising out of a fund proceeding from a third person; which last named trust property is to be exempted from equity jurisdiction, not wholly or absolutely, but to the same extent, and under the same conditions under which trust property may be enjoyed by the debtor, secure from the attack of his creditors, under other and general provisions applicable to trust property. In other words, it was a legislative declaration, in language intended to be explicit, but possibly liable to some misconstruction, that property held in trust for the debtor, when such trust proceeded from himself,

was in no case to be protected for his benefit; but where the trust or the fund proceeded from some other source, the liability of the property to, or its exemption from judicial seizure, was to depend upon the general provisions of law applicable to trust property.

It was not the intention of the legislature to exempt every species of trust property originated by a third person from liability for the debts of the beneficiary, nor to declare in this connection the condition and circumstances upon which such liability was to depend, but to qualify the comprehensive language employed in a previous part of the section and partially limit its otherwise apparently universal application.

The decision of this question is not, however, necessary to this case, in the view which I have taken of it; for if the interest of the debtor in this property is only subject to the claims of his creditors in a particular contingency, and then only to a limited extent, to wit, on the report of a surplus over and above an amount necessary or proper for his maintenance and support, we cannot *infer* that such surplus existed, and it was the office and duty of the pleader, by proper averments, to present such fact in the complaint, even if it were possible in the present proceeding to do so without new and distinct issues, or additional parties. The omission to state any of these facts in the complaint, I regard as a substantive defect, properly availed of by demurrer.

I am, therefore, of opinion that the judgment of the court below was right, and should be affirmed.

SELDEN, DAVIES, INGRAHAM and MULLEN, JJ., also for affirmance.

DENIO, Ch. J.   This was an appeal by the plaintiff from a judgment of the Superior Court of New York, in favor of the defendants, rendered upon a demurrer to the complaint.

The complaint stated that the plaintiff had, pursuant to certain proceedings supplementary to execution, in two certain actions which were mentioned, and in each of which

William H. Bonnett was one of the parties defendant, been appointed receiver of all the debts, property, equitable interest, rights and things in action of the defendants in each of those actions; the date of the first appointment being October 9th, 1838, and of the other June 3d, 1863; and that the plaintiff was duly invested with all rights and powers as such receiver, and that the defendants had notice of these appointments. The next averment was as follows: " The plaintiff further shows that Peter Bonnett (the brother of William H. Bonnett), late of the city of New York, deceased, in and by his last will, dated November 20th, 1860, gave and bequeathed the interest on the sum of $15,000, to be paid to the defendant, William H. Bonnett, during his lifetime; and in and by said will it is directed that said sum of $15,000 shall be kept invested on bond and mortgage, the interest whereof to be paid to said defendant, William H. Bonnett, during his lifetime." It was then averred that the will had been proved before the surrogate of the county of New York, and that letters testamentary had been issued to the defendants in this suit, one of whom was the said William H. Bonnett, as executrix and executor of Peter Bonnett, at different dates in September, 1850, and October, 1851, and that they had duly qualified.

The plaintiff claimed that he, as such receiver, was entitled to receive from the defendants the interest accruing on the $15,000 from the time of his appointment; and he averred that " the defendants, as executrix and executor as aforesaid, had collected said interest on said $15,000 since the plaintiff was appointed receiver as aforesaid, and that, although the plaintiff had requested the defendants to render an account and to pay said interest to the plaintiff, they had neglected and refused to render such account, and to pay the interest or any part thereof to the plaintiff. The prayer was that the defendants render an account of, and pay the interest to the plaintiff, and for general relief.

The demurrer alleged that the plaintiff did not state in the complaint facts sufficient to constitute a cause of action against the defendants.

The judgment in favor of the defendants was affirmed at a General Term, upon which this appeal was brought by the plaintiff.

The general questions raised by this appeal are, first, whether the interest of the judgment debtor, William H. Bonnett, under the will of his late father, Peter Bonnett, was such an interest as could be aliened or disposed of by him; and if it was, then, secondly, whether it could be subjected to the payment of his debts, by a proceeding *in invitum* of the character instituted by the plaintiff?

1. The fund of $15,000, out of which the interest was to accrue, must be taken to consist of money and personal estate. The will is not set forth at large, and it may be that the fund was to be created by the sale of real estate. But no such fact appears by the averments of the complaint; and if it did, the fund must still, upon the doctrine of equitable conversion, be considered and treated as personal. (*Kane* v. *Gott*, 24 Wend., 641; *Savage* v. *Burnham*, 17 N. Y., 561.)

The article of the Revised Statutes which treats of uses and trusts, contains the following provision: "No person beneficially interested in a trust, for the receipt of the rents and profits of lands, can assign, or in any manner dispose of such interest; but the rights and interest of every person, for whose benefit a trust for the payment of a sum in gross is created, are assignable." (Vol. I, p. 730, § 63.) There is no difficulty, I think, in considering the leaving a sum of money in the hands of executors, to invest on interest, with directions to pay the interest as it accrues to an individual a trust. But the statute speaks only of the rents and profits of lands, and does not in terms at all apply to the interest of money, or the income of personal property. But it has been said that the provision prohibiting alienation is made applicable to trusts of personalty, by another provision of the Revised Statutes, contained in the title relating to "accumulation of personal property, and of expectant estates in such property." (1 R. S., 773, §§ 1, 2.) After declaring, in the first of these sections, that the absolute ownership of personal property shall not be suspended, &c., except during the con-

tinuance of two lives in being at the date of the grant, or the death of the testator, if it be a will, it proceeds, in the second section, as follows : " In all other respects, limitations of future or contingent interests in personal property, shall be subject to the rules prescribed in the first chapter of this act, in relation to future estates in lands." The reference obviously is to the first article of the second title of that chapter, which treats of the creation of estates in lands. (1 R. S., 721.) The greater part of the article is devoted to the definition of, and to the rules regulating estates in expectancy, which are divided into estates commencing at a future day denominated future estates, and reversions. (§§ 7 to 42, inclusive.) A variety of rules, as is well known, are laid down as to the creation of such estates. The term used in the law of real estate, to denote the act of prescribing by deed or will the commencement, the duration and the termination of such estates, is the *limiting* them, and the completed act by which they are thus created is called a *limitation;* and one or the other of these words is used in that sense, in nearly every one of the thirty-five sections included in my quotation. These are the rules which, by section two, above mentioned, are attached to limitations of future and contingent interests in personal property. The provisions of the article concerning uses and trusts, in which the provision restraining alienation is found, relate to quite a different subject, and do not touch the subject of limiting future estates. They commence by abolishing uses and trusts of real estates, except as authorized and modified by that article; and they declare that every estate and interest in lands shall be deemed a legal right, cognizable as such in courts of law, except when otherwise provided in that chapter. (1 R. S., 727, §§ 45, 46.) The provision first cited, declaring the non-alienability of the beneficial interest of a trust for the receipt of the rents and profits of lands, is found among those provisions relating to uses and trusts in lands. The argument which would annex this provision to trusts of personal property, would be equally strong to bring that species of property within the influence of all the pro-

visions of the article concerning uses and trusts; and upon
that position no trust of personal property could be created
for purposes not within the scope of the fifty-fifth section of
the article of uses and trusts. But the rule is notoriously
otherwise. The vice of a tendency to a perpetuity is made
equally fatal to disposition of both species of property by
force of separate express enactments, contained in the pro-
visions applicable to each (1 R. S., 723, § 15; id., 773, § 1);
but independently of this restraint, trusts may be created of
personal property, for any purpose not unlawful by the gen-
eral principles of law. (*Gott* v. *Cook,* 7 Paige, 521; *Kane* v.
*Gott, supra; Leggett* v. *Perkins,* 2 Comst., 297; BIDWELL,
*arguendo,* at p. 305, and GARDINER, J., at p. 313; *Savage* v.
*Burnham,* 17 N. Y., 561; *Brown* v. *Harris,* 25 Barb., 134;
*Van Vechten* v. *Van Vechten,* 7 Paige, 104; *DePuyster* v.
*Clendenning,* id., 295; *Everett* v. *Everett,* Court of Appeals,
June Term, 1864.*)

Hence, I conclude that there is nothing in our statute law
which restrains the alienability of the interest of the benefi-
ciary in a trust to receive and pay over the interest of
money or of personal property. If it should be asked upon
what policy I conceive the legislature to have proceeded in
the discrimination thus made between the two species of
property, in respect to arrangements which are otherwise
of so similar a character, the answer would be, in the first
place, that we are dealing with the positive prescriptions of the
written law, where the will of the legislature stands for the
reason of its enactments. It may be further observed, that
it was a leading object in the enactment of the Revised
Statutes to simplify the law of real estate, and to prevent
the title from being vested in one person while the right of
enjoyment was in another. This was considered a public
evil in respect to estates in land, and it had become a stand-
ing complaint, that titles were sometimes so complicated by
the employment of trusts that creditors and purchasers were
frequently misled and defrauded. The title to personal

* 29 N. Y., 39.

property was rarely made the subject of trust dispositions of any intricacy. Its changeable and fluctuating character offered little temptation for making it the subject of settlements requiring the interposition of trusts. It was, therefore, no departure from the system of the revisers to leave trusts of personal estate as it found them.

There was another reason for rendering trusts for receiving and distributing the rents and profits of land inalienable, as to the interest of the beneficiary, which had no application to trust of money or personal property. The 55th section of the article of uses and trusts, as reported by the revisers and enacted by the legislature, authorized trusts of this description only for receiving the rents and profits of lands, and applying them to the education and support or either, of any person during the life of such person. (Subd. 3.) This would embrace only a limited class of transactions, as it would naturally be confined to the cases of infants and indigent persons, who had wealthy friends desirous of making a permanent provision for their bringing up and maintenance; and these were objects which would commend themselves to the special favor of the legislature. I have no doubt but that it was these considerations which led the authors of the system to exempt the income of land devoted to such meritorious purposes from the general proscription of trusts in land, and, at the same time, to exempt the income of such trust estates in lands from the general policy of the law which renders all property of an individual liable to be appropriated to the payment of his debts. One provision was a counterpart of the other. The general principles established by the new system were relaxed in both instances in the interest of minors and destitute persons. Trusts for their benefit were tolerated, and at the same time a safeguard against the improvidence of the beneficiaries was provided by rendering their interest inalienable, and consequently not liable to be taken for their debts. The scope of the third subdivision was enlarged about a year after its passage, and a few weeks after it took effect, by substituting the word *use* for education and support

(Laws 1830, p. 386); and the provision, as thus amended, has been construed so as to embrace trusts for the direct and unqualified payment of the rents and profits of lands to the beneficiaries. (*Leggett* v. *Perkins*, 2 Comst., 297.) In giving a construction to any portion of the system as originally enacted, any reference to other parts, which its elucidation may require, must be to such other parts as they stood when the system as a whole was first adopted. The abolition of trusts, except as authorized by the 55th section, and which embrace only trusts of real estate, and the provision inhibiting the alienability of the interest or the *cestui que trust*, are parts of one system, and the latter is restricted to the same species of property as the other.

Plain as this conclusion seems to me to be, it has been the subject of some conflicting decisions. In *Hallett* v. *Thompson* (5 Paige, 583), a legacy of $4,000 was held liable to the satisfaction of a judgment against the legatee, though the principal was to remain in the hands of the executors and interest only to be paid to the legatee until he should require the capital to be paid. The chancellor said that a creditor's bill would reach only so much of the interest of personal property held in trust, as was not necessary for the support of the judgment debtor, by analogy to the 57th and 63d sections of the article of uses and trusts of land. But the case was decided on the ground that an uncontrollable interest in the $4,000 was bequeathed.

The case of *Gott* v. *Cook* came before Chancellor WALWORTH in 1839. An estate composed of real and personal property was put in trust, the rents, profits and interest being disposed of in a manner creating, as it was claimed, an unlawful perpetuity. As to the part which was personal, the impediment to the absolute ownership consisted in the alleged inability of the beneficiaries to alien their interests. The chancellor held the trust unlawful as to both species of property, and predicated his judgment upon the section of the article of uses and trusts which forbids the alienation of the interest of the *cestui que trust*, in a trust to receive the rents and profits of land (§ 63); and this he held to be

attached, by reference, to trusts of personal property by the second section of the title concerning expectant estates in personal property, which I have referred to. (7 Paige, 521.) The case was heard on appeal, in the court for the correction of errors in 1840, under the name of *Kane* v. *Gott* (24 Wend., 641), where the chancellor's decree was affirmed; but not at all on the ground on which it was placed by him, which, on the contrary, was expressly repudiated. The only opinion given was that of Mr. Justice COWEN, who demonstrated, in an argument of marked ability, that "it was not possible for one to create a trust of personal property in such terms as to render the interest of the parties entitled to receive the income inalienable, and that there was nothing in the statutes which either directly or by reference warranted such a position. The case of *Hone* v. *Van Schaick* (7 Paige, 222), was decided in the Court of Chancery a little earlier than that of *Gott* v. *Cook.* Property, real and personal, was put in a trust which was to continue for an absolute term of twenty-one years, and the income and interest were disposed of to the descendants of the testator in a manner not material to be stated. The devise of the real estate was clearly void, since it had been held that no suspension of the powers of alienation could be allowed for any period except during a life or lives in being; and the estate of the trustees and of the beneficiaries in trusts of land were both inalienable by the express provisions of the statute; and as to the part which was personal, the chancellor held it to be void by importing the provisions of the 63d section of the article of uses and trusts into trust dispositions of personalty by means of the reference which has been mentioned. The decree was affirmed in the court of errors on the single opinion of Mr. Justice BRONSON. He refrained, however, from committing himself to the position of the chancellor respecting the inalienability of the interest of the *cestui que trust* in trusts of personal property; for he remarks upon that subject, "no distinction was made on the argument between the real and personal property included in the trust" (p. 567). The same question was again presented in the Court of Chancery, in

*Clute* v. *Bool*, reported in 8 Paige, p. 83. A father had by his will directed his executors to set apart, out of his personal estate, a sum sufficient, at six per cent, to raise an annuity of four hundred dollars, which annuity he directed to be paid to his son for life, in quarterly payments. A judgment creditor attempted to subject this annuity to the payment of his judgment; but it was held to be an inalienable interest, and hence not liable to the debts of the annuitant. The chancellor conceded that section 63, as it stands in the article of uses and trusts, related and was confined to the income of real estate only; that it was made applicable to a similar interest in the income of personal estate by section 2, so often referred to, which directs that limitations of future and contingent interest shall be subject to the rules prescribed in relation to future estates in lands. The learned chancellor stated the principles which governed him in the following language: "All dispositions of the rents and profits to accrue and be received subsequent to the execution of the instrument, that is, subsequent to the death of the testator, where such disposition is made by will, are considered *future estates*, and to be governed by the same rule" (p. 85). I have already observed that future estates, as defined by the Revised Statutes, and as understood in the law of real estate, are prospective and future in quite a different sense than the one thus given. If the chancellor's definition is correct, I do not see but that a fee simple conveyed by deed or devised by will would be a future estate; but yet it is perfectly certain that this is not what was meant by the statute. This decision was made about one year prior to that of the court of errors in *Kane* v. *Gott;* and the one in *Hone* v. *Van Schaick* was still earlier. I cannot but think that if the learned chancellor had enjoyed the advantage of perusing the argument of Judge COWEN, a different determination would have been made. He, however, in a subsequent case, reiterates the position that the income arising upon trusts of personal property is inalienable by analogy to the provision in that respect in the 63d section of the article relating to trusts in land. But the case did not call for an

opinion on that point, the trust being, as was held, for the payment of a gross sum.

In *Grout* v. *Van Schoonhoven* (1 Sandf. Ch., 336), decided in 1840, the question we are considering came before the late assistant vice-chancellor of the first circuit, and was examined with great care. It is obvious that he had before him the several cases upon that question which had then been adjudged and to which I have referred. His conclusion is expressed as follows: "It is thus perfectly plain that the provisions against the aliening of trust interests in lands have no application to a vested interest in possession under a trust of personal estate. I have perhaps been more minute in the *demonstration* than was necessary, because in one or two instances where trusts of real and personal property were created by the same deed the courts have blended them together without discrimination in speaking of the inalienability of trusts."

The principle involved in this discussion is one of very grèat practical importance. It is no less than this: whether it is in the power of owners of personal property to dispose of the whole beneficial interest in it, in such a manner that the grantèe or donee may hold and enjoy it without its being liable for his debts. The statute does not limit the amount which may thus be held in trust, and takes no account of the circumstances or needs of the beneficiaries. Fortunes of any amount may thus be conveyed, and their beneficial owners, if they will spend his income as it is received, no matter in what kind of luxury or extravagance, or give it away, may put their creditors, who will probably have trusted them upon the credit which their apparent circumstances have inspired, at defiance. It may be said that this may be done where the subject of the trust is real estate; and that is true. I have endeavored to show that this is the result, not of any intelligent legislative intent, but of an inadvertence in omitting to alter the provision as to inalienability of trusts, when the purposes for which trusts of lands were tolerated were changed from provisions for education and support, into an unlimited control of the income. But I do

not maintain that it is competent for the courts to deny the consequence which results from the declared inalienability of the interest of the beneficiary in trusts of land, though they may see ever so clearly that the provision as it stands was the result of an oversight on the part of the legislature. But in regard to trusts of personalty, I do not find any such provision in the statutes.

By the common law and the doctrines of courts of equity, the interests of the beneficiary in such trusts were the subjects of the resort of their creditors. They would pass under the bankrupt and insolvent laws and might be reached by the creditors by proceedings in equity. (*Bryan* v. *Knickerbocker*, 1 Barb. Ch., 409, and see the cases cited by the Chancellor from the English courts of equity.) It is against the policy of the law and the interests of trade to protect such property where the legislature has not in terms shielded it from the pursuit of creditors.

2. But there is another provision of the Revised Statutes, by which, at first, I felt more embarrassed than by those which I have thus far considered; but which, after a good deal of consideration, I have concluded does not stand in the way of the plaintiff. The statutory provision enabling judgment creditors to reach the choses in action, and personal property of the debtor, and property held in trust for him, is in the article relating to the jurisdiction of the Court of Chancery. (2 R. S., 173, §§ 38, 39.) The first of these sections provides for a bill for discovery of the debtor's property, money or things in action, *or held in trust for him*, and for an injunction restraining him from disposing of it, "except where such trust has been created by, or the fund so held in trust has proceeded from some person other than the defendant himself." The next section empowers the court to decree satisfaction of the judgment, "out of any personal property, money or things in action belonging to the defendant, or held in trust for him, *with the exception above stated*," &c. The exception in each section was inserted by the legislature, the draft reported by the revisers containing no exception. (3 R. S., 2d ed., p. 669.) I am of opinion that the authority

which the courts now possess, to subject such property to the payment of judgments, is derived from this legislation. Though, the better opinion may have been that courts of equity had an inherent power over the subject before the statute, it was not a settled point, the decisions being contradictory. (3 R. S., 2d ed., p. 669; *Hadden* v. *Spadder*, 20 Johns., 554; *Donovan* v. *Finn*, Hopk., 59.) When, therefore, the legislature came to define the cases, and to prescribe the manner in which intangible personal property should be compulsorily subjected to the satisfaction of the debts of the owner, the provision ought to be considered exclusive of any other authority for effecting the same object. If, by the true construction of the language of the exception, the interests of the beneficiary, in trusts of personal property, are excluded and exempted from the scope of this remedy, there is an end of the question, and such interests cannot be reached in any manner. But the cases have strangely confused this question. In *Hallet* v. *Thompson*, already referred to, the chancellor held the exception, in regard to trusts both of real and personal property, to be limited to so much of the income as should be necessary to the support and maintenance of the beneficiary, and that the creditors might subject the overplus. The exception, he said, "was unquestionably intended by the legislature to protect the beneficial interest of the *cestui que trust*, in trusts of this description, and in such only to the extent of a fair support and maintenance, out of the trust property which had been invested in trusts by some other person for his benefit." It was supposed that the 57th section of the article of uses and trusts authorized this modification of the general language of the 38th and 39th sections of the article concerning the jurisdiction of the Court of Chancery. The first mentioned section is in these words: "Where a trust is created to receive the rents and profits of land, and no valid direction for accumulation is given, the surplus of such rents and profits, beyond the sum which may be necessary for the education and support of the person for whose benefit the trust is created, shall be liable in equity to the claims

of creditors of such person, in the same manner as other personal property which cannot be reached by an execution at law." The difficulty of applying this provision to the case of a trust of personal property, is the same which we experienced in connecting the section declaring the inalienability of the rents and profits of land with trusts of personalty. It is confined by its language to trusts of lands, and is found among the series of provisions which regulate trusts of real estate, and have nothing to do with personal property; and the section assimilating limitations of future and contingent interests in personal property to those limiting future estates in lands is, as we have seen, foreign to the question. But what was said by the chancellor in the case of *Hallett* v. *Thompson*, was *obiter*, as has been mentioned. In *Graff* v. *Mason* (4 Sandf. Ch., 357, anno 1846), where it was sought, in a creditor's suit, to reach an annuity of $2,500 per annum, payable to the judgment debtor, out of a trust embracing real and personal estate, the vice-chancellor gave up the position, which he considered perfectly plain, in *Grout* v. *Van Schoonhoven*, and yielded to the authority of the chancellor's doctrine, that both the 57th and 63d sections are applicable to the income of personal as well as real estate, and that these sections should be held to qualify the exceptions in the 38th and 39th sections of the article respecting the jurisdiction of the Court of Chancery. The immediate question was upon inserting the substance of the exception in the injunction. The case came before the chancellor in 2 Barb. Ch., 79, where the principle of the decision of the vice-chancellor was adhered to. It is to be remarked, that what was said by him upon this point was *obiter*, the order which would have raised the question not having been appealed from.

The effect of sections 38 and 39 was again spoken of by the chancellor in *Degraw* v. *Clasen* (11 Paige, 136). The question arose upon the settlement of the form of an assignment upon a judgment creditor's bill. The interest, which it was the design of the suit to reach, was an annuity of $700 a year charged by a will, in effect, upon real estate

of the deceased in the hands of his devisees. The master had directed an exception to be inserted in the instrument excluding the annuity from its operation. The chancellor held that it should not have contained any exception, but have been absolute, because there was no trust to bring the case within the sections. In his observations on those sections, he considered them to embrace only such interests as were declared by the 63d section of the statute of uses and trusts to be inalienable, and said that neither law or sound policy would allow an absolute and unconditional right to property to be vested in a person which he might use and dispose of as he pleased, by anticipation or otherwise, but in relation to which property he might set his creditors at defiance.

The Supreme Court, under our present system, has taken a different view of these sections. In *Stewart* v. *McMartin* (5 Barb., 438), the debtor was entitled to the income of a trust fund created by a deed of her father, executed in Scotland long before the enactment of the Revised Statutes. The court held that the sections in question prohibited its being subjected to her debts. In a very elaborate opinion prepared by Judge PAIGE, it was shown that but for the sections in question, the income under consideration would have been liable to the pursuit of the creditor. He denied the soundness of the doctrine that these sections were only operative in cases where the interest sought to be reached was made inalienable by the Revised Statutes; and the judgment given could not be sustained without overruling that doctrine, as the trust was one not at all under the influence of these statutes.

A single other case upon these sections remains to be mentioned, *Bramball* v. *Ferris*, recently decided in this court (14 N. Y., 81). The debtor was entitled, under the will of his father, to a share in the income of the residue of the testator's estate during life. The residue had all become personal by the execution of a power of sale. There was a codicil providing that if a judgment should be rendered against the son upon a creditor's bill, the payments of income

to him should cease, and the executors were thereafter to expend it for the benefit of his family. The only question discussed was as to the effect of the codicil. Two opinions were delivered respectively by Judges COMSTOCK and MITCHELL. They concurred in holding that the codicil operated to extinguish the power of the creditor to assert his claim against the income; and the judgment of the Supreme Court in favor of the defendant was affirmed. Judge COMSTOCK held the judgment right in another aspect, viz., that the 38th and 39th sections of the article, relative to the jurisdiction of the Court of Chancery, precluded the plaintiff from enforcing his claim by creditor's bill. He said that was the construction the statute had *generally* received, and quoted *Clute* v. *Bool*, and *Stewart* v. *McMartin*. It cannot be said that this was more than the opinion of a single judge; and 'I conceive that it was virtually opposed to the judgment of the court of errors in *Kane* v. *Gott*, and that it was an extension of the statute to a case which was not within any reasonable construction of its language.

I am of opinion that neither of the theories upon which it has been attempted to construe these sections is sound. The exception is general, embracing both kinds of property, and it cannot therefore refer to and be limited by the provision rendering inalienable the interest of *cestui que trust* in trusts of real estate. There is no such language as would confine it to the surplus beyond what might be needed for the education and support of the beneficiary. These suppositions are pure conjectures. What, then, is the meaning of the exception in the 38th and 39th sections? In my opinion it is simply this: that where a trust has been created by some other person than the defendant, or funds held in trust have proceeded from some other person than the defendant, satisfaction of the creditor's judgment is not to be decreed out of such trust funds. In other words, the trust is not to be subverted or destroyed, and the property or money so placed in trust is not to be taken by the creditor where it has proceeded from another party. If a debtor will make a conveyance of his own money or lands in trust for himself, the

property so put in trust, or, in the words of the statute, so held in trust for him, is to be applied to the payment of his debts; but if a relative or other person will create a trust for his benefit, though the property is in a legal as well as a popular sense held in trust for him, as it was not his property before being embraced in the trust, it is not to be disturbed. It was to guard against a possible construction of the general words which would allow the trust fund itself to be taken, that the exceptions were introduced by the legislature. There is not one word said respecting the income of the trust funds. It is a common device of fraudulent debtors to convey their property upon trusts for their benefit, and one branch of the statute of frauds is aimed at that practice; and hence this statute, in terms, subjects all property and things in action, held in trust for the debtor, to the satisfaction of the judgment; but as a trust created by another for his benefit, would fall within the general words of the act, the trust fund was, by abundant caution, protected by the introduction of the exception. A construction which should embrace the income which belongs absolutely to the debtor, within the exception, would form an anomaly in the law. The most enormous incomes could be held and enjoyed with a perfect immunity against the ordinary liability which the law imposes upon every other person, of having his property taken for the payment of his debts. No one can deny that it would violate all legal analogies of the law of debtor and creditor, and the soundest principles of public policy and morality, to give this effect to the sections of the statute in question. I do not think their language requires, or will permit it.

My conclusions upon the whole case are the following:

1. This being a trust of personal property, is not within the statute of uses and trusts of land. The provision establishing the inalienability of the interest of the beneficiary in that class of trusts, has, therefore, no application.

The continued existence of such a provision, in respect to trusts of lands, since it has been determined that such trusts may be created to pay over the rents and profits, is the

result of inadvertence; but it is an inconvenience that cannot be remedied by the courts.

2. The sections of the statute relating to the jurisdiction of the Court of Chancery, which except trust property from being reached by creditor's suits, refer to the property itself which is held in trust, and not to the interest or income which by its terms belongs to the beneficiary.

3. The plaintiff is entitled to have his judgment satisfied, out of the interest payable to William H. Bonnett, upon the sum of $15,000, held in trust for his benefit; but the title and interest of the executors, as trustees, is not to be interfered with, and the trust fund is not to be touched.

If these positions are sustained by the judges, the judgment of the Superior Court must be reversed, and judgment rendered for the plaintiff; the record to be remitted, to enable the Superior Court to proceed in the case according to law and the practice of that court.

JOHNSON, J., concurred with DENIO.

Judgment affirmed.