CHARLES Y. ROOSEVELT and others, Appellants and Respondents, v. JAMES A. ROOSEVELT and THEODORE ROOSEVELT, Executors, etc., and others, Appellants and Respondents.

*Trust — power of trustee to make advances to beneficiary — discretion as to — cannot be controlled by court.*

Where personal property was given to trustees in trust to pay over the income to a *cestui que trust* during his life, and upon his death to pay over and transfer the said property to his issue, and in default of such issue to certain other persons, the trustees being authorized to make such advances out of the principal to the *cestui que trust* as they should deem most conducive to his interests: *held*, that the trust was valid, and that the power to make advances was not repugnant to the gift of the remainder to the issue of the *cestui que trust*.

The trustees were unqualifiedly directed to pay over and assign the property, upon the death of the *cestui que trust*, to his issue, or in default of such issue to certain other persons designated in the will, and were authorized to make the advances out of the capital. *Held*, that it was not intended to authorize the trustees to entirely subvert the trust by paying over the whole of the principal, but simply to place them in a position in which they could relieve the *cestui que trust* from emergencies which the income of the trust estate might prove insufficient to meet.

*Held*, further, that whether or not any advance should be made and its amount was left entirely to the discretion of the trustees, and with this discretion the court could not interfere so long as the trustees acted in good faith.

Trustees, to whom real estate has been devised, may be authorized to sell the same and reinvest the proceeds arising therefrom in other real estate to be held in the place of that sold.

*Belmont* v. *O'Brien* (12 N. Y., 394) followed.

The same rule applied as to the inalienability of the income and profits of trust estates in personal, as in real property.

APPEALS from a judgment, entered upon the trial of this action by the court without a jury.

James I. Roosevelt died on the 5th day of April, 1875, leaving a last will and testament, bearing date the 18th day of September, 1871, and thereby appointed John Q. Jones and the defendants, James A. Roosevelt and Theodore Roosevelt, executors and trustees under the said will. The defendants James A. Roosevelt and Theodore Roosevelt qualified as executors and trustees, and

are engaged in the performance of their duties. John Q. Jones has not qualified, and refuses so to do.

The plaintiffs, children of the testator, requested and demanded that the defendants, executors and trustees, in part execution of the power and direction contained in the fifth clause of said will, should pay to them respectively an advance of $100,000 each. The executors and trustees admitted that such a payment would redound to the interests of said plaintiffs, and would be judicious, proper, discreet, safe, and conducive to the true interests of the said plaintiffs, who are beneficiaries under said will, but refrained from making such advances of the magnitude requested, for the reason that it would be contrary to the intent and will of the testator, and because they believed it unlawful to make payments from the capital of said personal estate, which would materially reduce or destroy the interests of the devisees in fee.

The fifth clause of the will, upon the construction of which this litigation arose, is as follows :

" Fifth. All my personal estate not otherwise effectually disposed of, I give to my executors, or such of them as may qualify, and the survivors and survivor of them, in trust to divide the same into as many shares of equal value as I may have children living at my decease, and to set apart one of such shares for each child, to be invested in the names of my executors as trustees for each child respectively ; and upon the further trust to receive the interest and income of each share, and apply the same to the use of such child during his or her natural life ; and on his or her death to assign and transfer his or her share to his or her issue then living, according to their stocks ; and if none, then to the brothers and sister then living of such deceased child ; provided that the issue then living of a deceased brother or sister shall take, according to their stocks, the share which the parent would have taken if living. If either of my children should die before me, leaving issue living at my decease, such issue, if more than one, shall take in equal parts the share which otherwise would have been allotted to his, her or their parent, to be held, nevertheless, for their benefit during their respective minorities by my executors, as trustees in trust to receive the income thereof, and apply the same to the use of such issue respectively, during their respective minorities. Should either of the

issue of a deceased child of mine at the time of my death be under the age of twenty-one years, I direct that the income of the share of real or personal estate, or both, given to or in trust for such minor, under this will, after providing for his or her support and education, in such manner as to my executors for the time being may seem suitable, shall be accumulated for the benefit of such minor until the expiration of his or her minority.

"Should any of the devisees in remainder to whom I have given estates in fee on the death of the respective life beneficiaries, be at the time of such death under the age of twenty-one years, and die thereafter under that age, and leave no issue living at his or her decease, then his or her share of real estate shall go to his or her brothers or sisters, if any then living, and the issue, if any then living, of deceased brothers and sisters, according to their stocks; and if none, to my other descendants, then living, according to their stocks.

"I authorize and empower my executors, should they deem it judicious and proper, to make advances in their discretion to each of my children, respectively, out of the capital of his or her share, from time to time and in such amounts as may seem safe and conducive to the true interests of the beneficiary."

The testator also authorized his trustees, "in their discretion, from time to time, to make leases, with reasonable rents and with suitable covenants, and for such lawful terms, not exceeding twenty-one years, as they may deem most beneficial; and, if in their judgment expedient so to do, to make sales and conveyances, from time to time, in fee simple, for such prices as they may deem just, investing the proceeds of such sales in other real estate, to be substituted in place of, and to be held upon the like trusts, and subject to the like powers, limitations and conditions as the real estate so sold."

The plaintiffs brought this action, which was tried at the Special Term of this court.

The justice before whom it was tried, found as conclusions of law:

First. That the provisions of the fifth clause of said will do create a valid and existing discretionary trust, and vest in said executors and trustees, in trust, the absolute title of the personal estate referred to in said clause, to be disposed of as therein directed.

Second. That said executors and trustees are authorized and empowered, should they deem it judicious and proper, to make advances, in their discretion, to each of the children of the testator, respectively, out of the capital of his or her share, from time to time, and in such amounts as may seem safe and conducive to the true interests of the beneficiary.

Third. That the said executors and trustees are fully authorized and empowered by the said fifth clause of said will, should they deem it judicious and proper, and conducive to the true interests of the beneficiaries, Charles Y., Frederick, and Marcia O. Roosevelt, plaintiffs, to advance and pay to each of them the said sum of $100,000.

Fourth. That the said executors and trustees having fully exercised the discretion and authority vested in them by the fifth clause of said will, and having, before the complaint herein was served, elected, decided, and promised to pay and make to the said plaintiffs, Charles Y., Frederick, and Marcia O. Roosevelt, such advancement and payment of $100,000, and being still willing to do so, and only refraining from making such advances because they are advised and believe that the making thereof would be unlawful, and contrary to the intent and will of the testator, as expressed in his last will and testament, and for no other reason, the said plaintiffs, Charles Y., Frederick, and Marcia O. Roosevelt, are entitled to the decree of this court in their favor, and the same is hereby ordered, directing, requiring, and authorizing the said executors and trustees to advance and pay over to each of them the said sum of $100,000.

Fifth. That said executors and trustees, in the lawful exercise of the discretion and authority vested in them by the fifth clause of said will, if they deem it judicious and proper, and conducive to the true interests of the beneficiaries, may make advances to each of the children of the testator, respectively, out of the capital of his or her share, in such amounts, from time to time, as they may elect, even to the extent of the entire capital or share of each of said children.

Sixth. That the interest of the grandchildren of the testator now living, and of those that may be hereafter born, and of any other persons entitled to the balance of the share of a child of the testator remaining in the hands of the executors and trustees after the

death of said child, by the terms of the will, is an interest liable to be defeated by the exercise of the aforesaid discretion by the said executors and trustees.

Seventh. That the said executors and trustees can legally sell and dispose of the real estate of said testator devised to them in trust, and with the proceeds of such sale purchase other real estate, and hold the same upon like trusts, and subject to the same powers and conditions.

The defendants, the executors, etc., and the defendants Cornelia Carnochan Roosevelt and William Ouseley Roosevelt, by their guardian *ad litem*, appeal from every part of said judgment, except so much and such parts thereof as adjudge that the provisions of the fifth clause of said will do create valid and existing discretionary trusts, and vest, in trust, in the executors and trustees named in said will, and who have qualified, the absolute title of the personal estate referred to in said clause, to be disposed of as therein directed. The plaintiffs appeal from so much thereof as declares that a valid and existing discretionary trust is created by the fifth clause.

*Geo. G. De Witt, Jr.*, for the executors, appellants. Where a power is given to trustees to do or not to do a particular thing at their discretion, provided their conduct be *bona fide*, and their determination is not influenced by improper motives, the court has no jurisdiction to control the trustees in the exercise of that discretion. (*Pink* v. *Thuisey*, 2 Mad., 157; Lewin on Trusts, 449–454; Hill on Trustees, 765; Perry on Trusts, vol. 2, pp. 27, 508.) But it is always a question for the courts to determine, whether the action of the trustees in a given case is within the discretionary powers given them by the instrument of trust. (*Trustees of Smith* v. *Northampton*, 10 Allen [Mass.], 498; *Mason* v. *Mason's Exrs.*, 4 Sandf. Ch., 631 [old paging]; also, 13 Barb., 475; *Webster* v. *Buddington*, 16 Sim., 177; *Costabadie* v. *Costabadie*, 6 Hare, 410; *Forman* v. *Whitney*, 2 Keyes, 165.) In construing the trusts established by the fifth clause of said will, we must be guided by the intention of the testator as gathered from his will; the power is to be construed according to what the testator intended, and not according to what the court thinks he should have done. (*Mason* v. *Jones*, 13 Barb., 461; Perry on Trusts, vol. 2, p. 35; *Kerr* v. *Verner*, 66 Penn. St.,

326.) The remaindermen designated in said will have vested interests in the said capital of said personal estate, and it would not be lawful or consistent with the intent of the testator, and the said trustees are not authorized or empowered by any provision in said will, to make advances or payments from the cápital of said personal estate to the extent of the entire amount of said personal estate, or of any large amount that would extinguish or materially reduce the interest of the remaindermen. (1 R. S., 723, § 13 ; *Perry* v. *Wood*, 3 Ves., 204 ; *Hawley* v. *James*, 5 Paige, 321 ; *Lawrence* v. *Bayard*, 7 id., 75 ; *Pond* v. *Bergh*, 10 id., 140.) The trusts are perfect and complete. The discretionary power given to the trustees is a power authorized by the laws of this State. (Lewin on Trusts, 93.) When a gift is once clearly impressed with the character of a trust, a discretionary power, however ample, of controlling its application, will not alter that character. (Hill on Trustees, 103–108, and cases cited ; also, see chap. on Discretionary Powers, id., 760–784.) The power is collateral to the trusts, and if it is too indefinite, the power becomes void and the trust remains valid. In fact, instead of a power destroying a trust, it often implies or creates a trust. (2 Story's Equity Jur. [10th ed.], p. 314 ; *Burrough* v. *Philcox*, 5 M. & C., 73–92 ; *Prendergrast* v. *Prendergrast*, 3 Eng. L. and Eq., 16.)

*Edward T. Bartlett*, for plaintiffs. The fifth clause, as an entirety, creates a valid, discretionary trust. It is admitted that where the testator makes the discretion absolute in the donee, not only as to the time, the manner and the objects, but as to the trust itself, then equity will not interfere to raise a trust. (Tiffany & Bullard on Trusts, 728 ; 2 Fonb. Eq., 2 bk. ch. 2, § 4, note [*x*].) In the case at bar there is no discretion as to the trust itself. The trust is absolute, simply vesting in trustees a certain discretion within the limits of it. The following authorities show how common are trusts of this character : *Penny* v. *Turner* (2 Phillips, 493); *Brown* v. *Higgs* (4 Ves. Jr., 708); *Brown* v. *Higgs* (5 id., 495); *Brown* v. *Higgs* (8 id., 561); *Richardson* v. *Chapman* (2 Brown P. C., 318); *Harding* v. *Glyn* (1 Atkins, 469); *Longmore* v. *Broom* (7 Ves. Jr., 125); *Griffiths* v. *Evans* (5 Beav., 241); *Withers* v. *Yeadon* (1 Rich., Eq., 324); *Collins* v. *Carlisle* (2 B. Mon., 14);

*Russell* v. *Kennedy* (3 Brews., 438); *Parsons* v. *Barber* (18 Ves., 475); *Prevost* v. *Clark* (2 Maddock, 458); *Forbes* v. *Ball* (3 Merivale, 437); *Burrough* v. *Philcox* (5 Mylne & Craig, 72); *Dominick* v. *Sayre* (3 Sandf., 555). The trustees were authorized to make the advance to each child of $100,000, and having fully exercised their discretion in the premises, and elected and promised to pay to each child of the testator the said sum, refraining from such payment only for the reason that they were advised it would be contrary to the will and intent of the testator, a cause of action exists in favor of said beneficiaries, and the trustees may be compelled by the decree of the court to pay said amounts, if the court is satisfied that such payments would not be contrary to the will and intent of the testator.

*Geo. H. Yeaman,* for plaintiffs. If there be any irreconcilable conflict in the two provisions as to the gift to the remaindermen and the power to make advances, then, under a well established rule of construction applicable to wills, the last provision must prevail over the first. (*Bradstreet* v. *Clark*, 12 Wend., 602; *Griffin* v. *Ford*, 1 Bosw., 123; 1 Jarman on Wills, 411, 412, 415, 416; *Norris* v. *Beyea*, 13 N. Y., 283, 284.) If the first legatee is authorized to spend or consume the principal for his own purpose, a subsequent limitation, to take effect upon a contingency, would be void on the ground of repugnancy. (*Norris* v. *Beyea*, 13 N. Y., 273; 8 Viner's Abridgmt., 103; *Flander* v. *Clark*, 1 Ves., 9; S. C., 3 Atk., 509; *Atty.-Gen., etc.,* v. *Hall*, Fitzgibbons, 314; *Butterfield* v. *Butterfield*, 1 Ves., 133; *Bradley* v. *Paixoto*, 3 id., 324; *Ross* v. *Ross*, 1 Jac. & Walker, 154.) In this will the trustees are empowered to pay over all to first legatees who then take it absolutely; and, under the authorities above cited, that renders void the limitation over to grandchildren. An old English rule of construction, in the case of two irreconcilable devises, approved in modern times by Lord Brougham, would give half the thing devised to each legatee. Here the whole devise is to the executors, but the irreconcilability is as to the disposition of the fund. (*Norris* v. *Beyea*, 13 N. Y., 283, 284, and authorities cited; *Bradstreet* v. *Clark*, 12 Wend., 602, and authorities cited; *Saulsbury* v. *Denton*, 3 Kay & John., 529; *Fordyce* v. *Bridges*, 2

Phillips, 497; *Longmore* v. *Brown*, 7 Ves., 124; *Dobley* v. *The Atty.-Gen.*, 4 Viner's Abridgmt., 485.) In all cases, however, the fiduciary words must be imperative on the donee; and if they confer a mere power or authority and leave it entirely discretionary to apply or not to apply the gift to the designated purpose, no trust will be created. (Hill on Trustees, 66, 102; *Morrice* v. *Bishop of Durham*, 10 Ves. Jr., 536; *Ommaney* v. *Butcher*, T. & R., 270; *Gibbs* v. *Rumsey*, 2 V. & B., 297; *Bull* v. *Vardy*, 1 Ves. Jr., 270; *Thorp* v. *Owen*, 2 Hare, 607.) Under this will it is "entirely discretionary" whether the executors will hold for the grandchildren. It is not imperative, and therefore no trust for them is created. If a trust is intended but is not expressed, or is ineffectually created, or fails, the next of kin are entitled. But if the person taking has a discretion whether to make the application or not, it is an absolute gift, not a trust. (10 Ves. Jr., 535.) This, then, becomes an absolute gift to the children of testator, or to executors in trust, to pay out to children. The discretion is in the executors, therefore the absolute gift is to them, as executors, for distribution to next of kin. (*Brown* v. *Yeale*, 8 Ves. Jr., 50, note; *Ommaney* v. *Butcher*, Tur. & Russ., 270.)

*Charles A. Peabody*, for guardian *ad litem* of infant defendants.

DANIELS, J. :

By the present controversy, two portions only of the testator's will have been drawn in question. The first contained the disposition which he designed to make of his personal estate, and the provisions relating to that which are material to be considered, are all contained in the fifth subdivision of the will. These provisions are as follows:

"Fifth. All my personal estate, not otherwise effectually disposed of, I give to my executors, or such of them as may qualify, and the survivors and the survivor of them, in trust, to divide the same into as many shares of equal value as I may have children living at my decease, and to set apart one of such shares for each child; to be invested in the names of my executors as trustees for each child, respectively; and upon the further trust to receive the interest and income of each share, and apply the same to the use of such child during his or her natural life; and on his

or her death to assign and transfer his or her share to his or her issue, then living, according to their stocks; and if none, then to the brothers and sisters, then living, of such deceased child; provided that the issue then living of a deceased brother or sister, shall take, according to their stocks, the share which the parent would have taken if living.

"If either of my children should die before me, leaving issue living at my decease, such issue, if more than one, shall take in equal parts the share which otherwise would have been allotted to his, her or their parent, to be held, nevertheless, for their benefit, during their respective minorities, by my executors, as trustees in trust to receive the income thereof and apply the same to the use of such issue, respectively, during their respective minorities. Should either of the issue of a deceased child of mine, at the time of my death, be under the age of twenty-one years, I direct that the income of the share of real or personal estate, or both, given to or in trust for such minor, under this will, after providing for his or her support and education, in such manner as to my executors for the time being may seem suitable, shall be accumulated for the benefit of such minor, until the expiration of his or her minority. * * *

"I authorize and empower my executors, should they deem it judicious and proper, to make advances, in their discretion, to each of my children, respectively, out of the capital of his or her share, from time to time, and in such amounts as may seem safe and conducive to the true interests of the beneficiary."

And it will be seen at once that they have been so clearly expressed as to be free from all substantial ambiguity. It was the design of the testator that a trust should be created in his personal estate for the benefit of his children, in equal parts or portions, to continue through their respective lives, and, at the decease of either, that his or her share should be assigned and transferred to his or her children; and if no children existed, then to his own surviving child or children, and that the trust should be subject to the discretion vested in the executors, as trustees, to make advances from the body of the trust estate to the respective beneficiaries or *cestuis que trust*.

The counsel for the plaintiffs have claimed, and urged with much ability, that the provisions contained, relating to the trusts,

and those creating the power, are so far inconsistent that one or the other of them must be declared inoperative and void on account of repugnancy. But no authorities have been cited or referred to which would justify that conclusion in this case. The authorities referred to are of an entirely different nature, and relate to cases where an unqualified right to consume the body of the estate was created without the intervention of an actual trust; while in the present case, a clearly defined trust has been created and provided for, which, at most, may be subverted by means of future contingent events. The trust was intended to be in whole or in part conditional. But it cannot, under any well considered authority, be held void in its inception for that reason. On the contrary, it must continue in existence as long as that may be practical, consistently with the condition on which it has been made dependent.

Conditional trusts are not legal anomalies, and no good reason seems to exist for distinguishing them in this respect from legal estates. The right to subject their continuance to conditions, arises out of the authority possessed by the testator over the disposition which, in his judgment, should be made of his property. He may bestow it upon others, either absolutely or conditionally, legally or equitably; and trust estates may, like legal estates, be rendered dependent for their future existence upon any proper legal condition; and the discretion to which the trust in this instance has been subjected, is in the nature of such a condition. Similar trusts existed in the cases of *Palmer* v. *Wakefield* (3 Beav., 227); *Lyman* v. *Parsons* (28 Barb., 564; 20 N. Y., 103), and *Talbot* v. *Marshfield* (L. R. [4 Eq.], 661). And no doubt was either suggested or expressed as to their entire legality. No class of estates has been more restrained by future conditions and conditional limitations than trusts, and yet they have uniformly been sustained and executed where no positive provision of law has been contravened by means of them. In *Bramhall* v. *Ferris* (14 N. Y., 41), a trust was created for the benefit of one of the testator's sons, on the condition that his interest in it should cease upon a creditors' bill being filed against him, or any other proceedings instituted for the purpose of reaching his interest and diverting it from the object intended by the testator, if a decree or judgment should be obtained therein. It was claimed that the trust could not lawfully

be defeated by subjecting it to such a condition. But the court, in deciding the case, held the condition a lawful one, and that it was sufficient to defeat the trust. One of the opinions in the case was delivered by Judge MITCHELL, who held that "the father, when he made the will and codicil, owned the whole estate; he had the absolute power over it; he could carve out of it such interests as he pleased, if he violated no rule of law in doing so; he could give one-third to Myron, so long as he lived in this State, or so long as he lived out of it, or until a third person return from Rome or go to it, or any other similar arbitrary contingency, according to his will or caprice." (Id., 48, 49.) And cases are cited by the learned judge, maintaining the existence of that power over property owned and bequeathed by the testator. (Id., 49–51; *Shee* v. *Hale*, 13 Ves., 404; *Lewis* v. *Lewis*, 6 Sim., 304; *Cooper* v *Wyatt*, 5 Mead., 482; *Graves* v. *Dolphin*, 1 Sim., 66; *Brandon* v. *Robinson*, 18 Ves., 429.)

In the most favorable view that can possibly be taken of the case for the plaintiffs, the trust was created and intended to continue until it might be subverted by the payment of its capital to the beneficiaries, under the discretionary authority over it vested in the trustees. That may or may not affect it, depending upon the manner in which the trustees shall find their discretion to be controlled by present or future circumstances. Until they act under this power given them as incidental to the trust, the trust estate will continue entirely unaffected by it. And when they do exercise their discretion, it will simply reduce, without destroying it, as long as any portion of the capital may remain unexpended.

It has been urged that the power of the trustees over the capital of the trust estate, by means of the discretion given them, is entirely unlimited. But that clearly was not the view which the testator took of it, or designed to express. For the authority given the trustees to make advances was qualified by the circumstance that they should be taken out of the share of the person receiving them, which could not properly be said to be the case if the entire share should be exhausted by such advances. The testator also contemplated and provided for the continuance of the capital of the trust to some extent through the lives of the respective

beneficiaries, and that some of it would afterward certainly exist as a remainder. For he unqualifiedly directed the assignment and transfer of each share, at the decease of the person to be benefited by the trust, to his or her child or children, or if none existed, to the surviving beneficiaries. These provisions were all designed to be considered together, as the testator has expressed them. And, construed in that manner, it seems clear that he did not intend that the trust should ever be subverted entirely by means of the discretion vested in the trustees, but his object was simply to place them in a position in which they could relieve his children from emergencies which the income of the trust estate might prove insufficient to meet. This view is not only warranted by the language made use of, but, in addition to that, the ample condition of the capital of the estate tends to confirm the correctness of the conclusion. Each share in the personalty amounted to about the sum of $500,000, the income of which would ordinarily prove sufficient for the expenditures of one family. But if unforeseen events created demands for more than that, the trustees were invested with power to extinguish them, by advances made from the body of the estate. The testator evidently was governed by the supposition that this discretion would be exceptionally used, and never extend so far as to defeat the trust altogether, and the remainders primarily designed for his grand-children ; and it should not be permitted to do so, unless circumstances of so imperious a nature should hereafter arise, as to render that substantially unavoidable, and which cannot now be reasonably anticipated.

The trustees should endeavor to preserve the capital of the trust with the remainders dependent upon it, as far as that can be consistently done with the relief included in their discretion, for the benefit of the beneficiaries. Under the power conferred upon them, they have already concluded that an advance of $100,000 to each one of the testator's three children would be proper, and their decision upon this subject will constitute a complete authority for its payment. They have undoubtedly exercised their best judgment upon this subject, and that is all that can be required from them, under the authority which the testator conferred upon them. They have the power, under the will, to make these advances, but they

should do so in the uncontrolled exercise of their own discretion. That, the court has no power to increase or abridge, as long as the trustees act in good faith, as they certainly appear to have done in this instance; and for that reason, it should not by its judgment, as it has, direct and require the payments to be made; but the trustees should be left where the power in the will places them, at liberty to make them if they deem that to be judicious and proper. Their views upon this subject may yet be changed by circumstances not known or not fully considered when their conclusion was formed, and the judgment should be restricted so as to leave them subject to any modifications or qualifications which they may deem just and proper at any time prior to the fact of payment. It should also be further modified so far as to leave the trustees at full liberty to make advances, from time to time, as the testator authorized them by means of the power, without declaring that they may be extended so far as to exhaust the share of either of the children in the trust. For that would be going further than the testator either expected or intended. Precisely how far the trustees may lawfully go in their advances cannot be practically defined. But it is sufficient for all present purposes to say, that they may lawfully do what the testator has declared; and that is, to make such advances out of the capital of each share as they, from time to time, deem to be judicious and proper. To go beyond that is to exceed the power created by the will; and the judgment, as it now stands, seems to sanction that.

The testator, by his will, also created trusts for the benefit of his children in the rents and profits of his real estate not otherwise or differently disposed of. And as to that realty, he conferred upon the trustees the power, "if in their judgment expedient so to do, to make sales and conveyances from time to time, in fee simple, for such prices as they may deem just, investing the proceeds of such sales in other real estate, to be substituted in the place of, and to be held upon the like trusts, and subject to the like powers, limitations and conditions as the real estate so sold." The validity of this provision. has been questioned, but not seriously contested, upon the supposition that the change permitted by it, from real to personal property, was inconsistent with the inalienable nature of trust estates in land. For that reason it was suggested that the decision

in *Belmont* v. *O'Brien* (2 Kern., 394), which is a direct authority in favor of the validity of the power, had been made upon an unsound construction of the statute. And the case of *Kane* v. *Gott* (24 Wend., 661), was relied upon in support of the criticism made. But the intimation there made, that the statute declaring trust estates inalienable related only to trusts in real estate, has not since been sustained. For the provision declaring that in all other respects than those provided for by the section prescribing the limits beyond which the absolute ownership of personal property shall not be suspended, the limitations of future or contingent interests in personal property shall be subject to the rules prescribed in the first chapter of the act in relation to future estates in lands, has been considered sufficient to render trusts in personal property also inalienable during the period for which they may lawfully be created. (3 R. S. [5th ed.], 75, § 2.) In *Graff* v. *Bonnett* (31 N. Y., 9), which was an action by a receiver appointed in supplementary proceedings for the purpose of reaching the proceeds of a trust in personal property, the cases of *Kane* v. *Gott* and *Grout* v. *Van Schoonhoven* (1 Sandf. Ch., 336), were considered exceptional and unsound upon this subject. The learned judge, who delivered the prevailing opinion, stated his views concerning these cases in the following manner : " I think the great preponderance of authority is in the opposite direction, and that the rule has been recognized and acted upon for so long a period, and with such general acquiescence, that it has become a law of property and ought not now to be invaded ; and I confess, if the question were an original one, I should be of opinion that essentially the same rule should obtain as to the inalienability of estates and interests in both classes of property, and in the rents and profits and income thereof, as otherwise the restrictions imposed upon the enjoyment and transmission of interests in one class of property might be readily evaded by a testator directing its conversion into another. For myself, therefore, I feel inclined to adhere to the rule as I think it is generally recognized, and to leave it to the legislature to sanction a departure from it, if it shall be deemed advisable." (Id., 13.) Judge DENIO dissented from the judgment of the court as it was maintained by the opinion of Judge HOGEBOOM, for the reason, among others, that trusts in per-

sonal property were not subject to the statutory provisions concerning trusts in real estate. Johnson, J., concurred with him; but four of the other judges voted for an affirmance of the judgment, without indicating any dissent whatever as to any of the grounds taken for that purpose in the prevailing opinion. In the following case of *Campbell* v. *Foster* (35 N. Y., 361), *Graff* v. *Bonnett* (*supra*), was considered a controlling authority on this subject. Judge Wright said that it was the principal question then discussed, and that the case turned upon it. He took the same view of the statute (id., 370–373), and added: "I regard this case as settling in this court the mooted question of statutory construction, making applicable to trusts of personalty the provision prohibiting alienation of the interest of the beneficiary in trusts of land, and as affirming the position of the late chancellor as to the non-alienability of the interest of a beneficiary in a trust to receive the income of personal property to his use."

Under the doctrine of these cases there was no incongruity between the decision of *Belmont* v. *O'Brien* (*supra*) and the statute relating to trusts, and no foundation for the doubt suggested concerning its accuracy. The power created by this provision of the will was lawful, and the judgment, so far as it relates to it, should be sustained.

The judgment seems to be right in all respects, except those previously suggested. So far as it interferes with or controls the discretion vested in the trustees by the power to make advances, and declares that the advances may be continued until the trust estate in the testator's personal property shall be wholly exhausted, it should be modified by striking out or rejecting those provisions; and, as modified in that manner, affirmed, with costs to all parties, to be paid out of the estate.

Davis, P. J., and Brady, J., concurred.

Ordered accordingly.